Leon N. Armer, J.
This 23-year-old defendant stands indicted for rape, first degree, two counts allegedly committed April 13, 1975. Complainant claims that defendant punched and hit her, threatened to "blow her head off * * * blow her brains out”: saying "that he was connected with the Mafia, and they would get [her] * * * if I told the police he would *386 kill me” and "he had raped about four other chicks and his friends would get him loose anyway if [she] told the police”.
Defendant has moved for an order pursuant to People v Sandoval (34 NY2d 371) and People v Duffy (36 NY2d 258), precluding the prosecutor from cross-examining him upon trial relative to certain claimed prior bad acts. His concern extends to the following:
(1) On September 10, 1969 he was charged in the City Court of Buffalo with rape and grand larceny, first degree. The rape charge was dismissed after a hearing, and defendant pleaded guilty to petit larceny in satisfaction of the grand larceny charge. He was adjudicated a youthful offender upon such charge.
(2) On April 29, 1970 he was charged with unauthorized use of a motor vehicle, having been found by the police driving an automobile reported stolen. The charge was dismissed without prejudice June 4, 1970 on failure of the prosecutor’s witness to appear.
(3) On June 21, 1970 he was charged with assaulting one Robert Clark, a security guard, by striking him on the head with a bottle. The charge was dismissed October 27, 1970 without prejudice upon failure of the prosecution witness to appear.
(4) On June 21, 1970 he was charged with criminal mischief, third degree for recklessly damaging furniture in the home of Rogerleen Cottrell. The charge was dismissed October 27, 1970 on failure of the prosecutor’s witness to appear.
(5) On June 29, 1970 he was charged with grand larceny, first degree by extortion. One Sheila Crook, 16 years old, charged that she had intercourse with defendant after he threatened her with a stick with nails in it; that he then asked her if she had money and she said $10; defendant then told her to get the money Or he was "coming to get [her]”; that she told her mother, who called the police who arrived as defendant was trying to open the door. The charge was dismissed September 16, 1970 as being of "insufficient cause to hold for grand jury”.
(6) On June 29, 1970 he was charged with rape, first degree by a Sheila Crook who claimed he forced her to have intercourse with him upon threatening to strike her with a board with nails in it; the charge was reduced to sexual misconduct and dismissed July 6, 1970 for lack of corroboration.
*387 (7) On August 4, 1970 he was charged with robbery, first degree and rape, first degree; was held for action by the Grand Jury on a charge of robbery, third degree. He was not indicted thereon because the alleged victim had left the State.
(8) On August 30, 1971 he was charged with reckless endangerment for having fired a number of shots from a handgun through the windows of and into a room of the home of one Morris Hutchins who was sitting there. He was found guilty after trial and sentenced to a term of imprisonment for one year.
(9) On February 8, 1973 he was charged with assault, third degree upon one Joann Jeter with his hands and feet, fracturing her jaw and otherwise injuring her. The charge was dismissed April 3, 1975 on failure of the prosecution’s witness to appear.
(10) On March 8, 1973 he was charged with having raped one Betty Kirkland by threatening her with a gun. The charge was dismissed March 26, 1973 for insufficient evidence.
(11) On July 31, 1974 he was arrested for menacing and possession of a weapon. The charge was dismissed for failure of prosecution’s witness to appear.
(12) On October 11, 1974 he was charged with assault, third degree upon one Dorinda Wilson. The charge was dismissed upon withdrawal of the complaint November 20, 1974.
(13) On October 17, 1974 he was charged with assault, second degree in having removed a screen from a window and entering the home of Dorinda Wilson, and stabbing her in the breast, threatening to cut her throat and biting her after she had fled her home. The complaint was withdrawn November 20,1974.
People v Sandoval (34 NY2d 371, supra) and People v Duffy (36 NY2d 258, supra) formalized a procedure for pretrial (or on trial without the presence of a jury) determination on his behalf of the scope of past behavioral impeachment testimony utilizable against an accused. The Court of Appeals in its decisions made no sweeping changes in existing substantive law on the subject (cf. People v Law, 48 AD2d 228, 235), although the court did note "a growing awareness that there may be undue prejudice to a defendant from unnecessary and immaterial development of previous misconduct.” (People v Sandoval, supra, p 378, emphasis supplied.)
In the instant case there can be no question but that the *388 primary issues for determination by the jury in this case will be the credibility of the alleged victim vis-á-vis that of the accused. Such was the case in Gordon v United States (383 F2d 936, 941), in which then Judge, now Chief Justice Burger in commenting on a similar situation stated: "Rather it was received because the case had narrowed to the credibility of two persons — the accused and his accuser — and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed.”
On the other hand to be cast into the balancing process with such judicial fact of life is "the validity of the factfinding process if the defendant does not testify out of fear of the impact of the impeachment testimony for reasons other than its direct effect on his credibility — as where the defendant would be the only available source of material testimony in support of his defense.” (People v Sandoval, supra, p 378.)
Sandoval-Duffy place no responsibility upon the prosecutor to winnow out from his cross-examination of a defendant such prior criminal, vicious or immoral acts of which he has knowledge as may be subject to interdiction by Sandoval-Duffy. Nor does the Trial Judge become the moving party to forestall use of such acts. It is the defendant’s burden, "and it is his”, to demonstrate prejudice (People v Sandoval, supra, p 378) from which is to flow the "sensitive, informed reconciliation of the interests of the People and the rights of the defendant”. (People v Sandoval, supra, p 375.) The tests to be applied are noted:
1. "[T]he evidence should be admitted if it will have material probative value on the issue of defendant’s credibility, veracity or honesty on the witness stand.”
2. "[I]t should not be admitted unless it will have such probative worth”.
3. "[I]t should not be admitted * * * if to lay it before the jury * * * would otherwise be so highly prejudicial as to call for its exclusion.” (People v Sandoval, supra, p 376.)
On these Sandoval-Duffy hearings, the prior acts shown trend to two essentially differing patterns. The first involves a prior specific act or acts, each of which may or may not "bear logically and reasonably on the issue of credibility.” (People v Sandoval, supra, p. 376.) The second, and more troublesome to adjudge are those multiple acts falling into what may be called the "self-interest pattern” of "widespread illegality *389 * * * so as to reveal a disposition or willingness on [defendant’s] part to place self-interest ahead of principle and society, proof that was relevant to suggest his readiness as a witness to do so again (cf. People v. Sandoval, supra).” (People v Duffy, 36 NY2d 258, 262, supra.) Such is the case at hand.
Here no act shown appears to have been a mere malum prohibitum violation of sumptuary law; or so remote in time from those others shown as to have no present materiality. Interrogation as to each act will flow from a reasonable "basis in fact” (People v Kass, 25 NY2d 123, 126); i.e., the sworn accusation laid. No adjudication in defendant’s favor on the merits reaches any act. No reason appears to distinguish between criminal gratification of sexual as opposed to financial desires as-denoting greater "honesty and integrity” (People v Sandoval, supra, p 377) in the one as over the other. Questioning will have a "purpose other than to show that [the] defendant is of a criminal bent or character and thus likely to have committed the crime charged” (People v Schwartzman, 24 NY2d 241, 247), since the paramount and critical issue of respective credibilities of two persons so clearly appears. The alleged victim may be assured of the usual searching cross-examination customary to rape cases, and, except as the same may be limited by CPL 60.42, past acts of hers comparable to those allegedly engaged in by defendant, if any, will be fully exploited.
The defendant’s burden in seeking the deliberate distortion of the bases for the jury’s decision by this court through requesting the secreting from the jury of impeaching evidence of this nature as to one critical witness, yet not of the other if such exists, must be clearly sustained before this court will be compelled to act. No such finding can be or is made here. In the similar situation of credibility of the accused against the accuser found in People v Duffy (supra), our courts did not shrink from permitting the "self-interest pattern” of impeaching evidence to be shown. It is obvious that the "sensitive * * * reconciliation of the interests of the People and the rights of the defendant” (People v Sandoval, supra, p 375) does not require rejection of a "sensitivity” toward the integrity of the fact-finding process. This court finds the evidence, restraint of which is sought, "necessary and material” (cf. People v Sandoval, supra, p 378) and denies the motion to enjoin production of the same by the prosecution. The fact of the youthful offender adjudication cannot, of course, be shown, *390 although the acts underlying the same are admissible. (People v Duffy, supra, p 264.)
In so ruling, this court has considered the possible effect of the defendant’s failure to testify by reason of the impact of the impeaching testimony, and finds such effect negated by the burden of proof resting upon the prosecution, i.e., proof beyond reasonable doubt; the searching cross-examination of the alleged victim peculiarly available in charges of rape; and the fact that no presumptions are available to the prosecution herein to assist in establishing the guilt of the defendant.
All parties are directed to appear February 26, 1976, 9:30 a.m., Supreme Court, Part II, to determine readiness to proceed to trial.