The People of the State of New York, Respondent, v Fred Davis, Appellant.

The People of the State of New York, Respondent, v Alexander George, Appellant.

First Department, December 2, 1976

*Theodore Ruthizer* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for Fred Davis, appellant.

*Lewis R. Friedman (Litman, Friedman & Kaufman* and

*Herman Kaufman* with him on the brief), attorney for Alexander George, appellant.

*Joyce Marie Andren* of counsel *(Mario Merola, District Attorney),* for respondent.

SILVERMAN, J. Defendants appeal from judgments of the Supreme Court, Bronx County, convicting them after a joint trial of the crime of criminal sale of a dangerous drug in the third degree and related crimes and sentencing each of them to a term of imprisonment of seven years.

## People v Davis

The chief point urged on appeal by defendant Davis is that the court had previously accepted a plea of guilty to the lesser crime of attempted criminal possession of a dangerous drug in the fourth degree, a class E felony (see Penal Law, former § 220.15 [L 1969, ch 788]; Penal Law § 110.05), to cover the entire indictment; that thereafter, the court unilaterally set aside that plea and directed a trial upon which the defendants were convicted of the class C felony (Penal Law, former § 220.35 [L 1969, ch 787]) for which they were indicted and for which they have now been sentenced. In essence this is a claim of double jeopardy.

In our view the fair meaning of the proceedings that took place at the time of the vacating of the plea to the class E felony was that the defendant applied to withdraw his plea of guilty and the court granted that application, and this was the understanding of all at the time.

While we are here discussing the defendant Davis, some light is cast on the matter by the proceedings with respect to the codefendant George whose case is in almost all respects identical with Davis'; most of the proceedings were joint proceedings, including the original plea and the trial. The only difference is that George's attorney explicitly moved to withdraw the plea in so many words while the defendant Davis' attorney did not use those precise words. But the entire proceedings make it clear that that is what the defendant was doing.

The suppression hearing was in progress before Justice WARNER when the defendants withdrew their motion to suppress and asked to withdraw their plea of not guilty to the indictment and to enter a plea of guilty to the class E felony of attempted possession of a dangerous drug in the fourth

degree. The District Attorney stated that he would recommend a sentence of one year in prison for each defendant. The District Attorney stated that if the court did not follow the recommendation of the People, the People would have no objections to defendants' withdrawing their pleas. After consultation between defendant Davis and his attorney, the defendant Davis made the following unusally explicit statement:

"THE DEFENDANT DAVIS: I'll take my plea back on the day of sentence if you don't go along with the recommendation.

"THE COURT: All right, I'll let you withdraw your plea if I don't go along with the recommendation."

At the time for sentence on the plea, Justice WARNER, having considered the probation report, decided that he would not follow the District Attorney's recommendation for a one year sentence. The sentence of the codefendant George came up first and the court immediately stated that he could not go along with the recommendation and that the codefendant George would be permitted to withdraw his plea of guilty. After some further discussion, the codefendant's attorney explicitly stated, "the defendant then desires to withdraw his plea of guilty and proceed" and he also withdrew the previous withdrawal of the motion to suppress.

On the same day the proceedings with respect to the defendant Davis took place. Again Justice WARNER stated that he could not go along with the one-year recommendation and stated that he had said at the time the plea was entered that if he could not do so with respect to this defendant, "the court would permit him to withdraw his plea." The court then stated some things about the probation report and then said: "Based on all of these circumstances this court at this time will entertain a motion by counsel to withdraw his plea of guilty and to reinstate his plea of not guilty and set a date for trial." Davis' attorney then stated that there had been some discussion of commitment of the defendant Davis to NACC (Narcotic Addiction Control Commission) and made a plea that the court should sentence the defendant to NACC. He ended his plea with this statement, "but I would like to see the court accept the plea of guilty and sentence this man to N. A. C. C.; if not Judge, I'm going to request that the minutes, the hearing be held de novo. THE COURT: That's denied; the application to withdraw the plea of guilty and reinstate the plea of not guilty is granted. February 16th for trial. MR. LOBWOHL [Defendant Davis' attorney]: Judge, can we have the

hearing follow this case because these defendants have been incarcerated for some time. Can we have a hearing now?"

It is apparent that the court thought that the defendant was moving to withdraw his plea and not that the court was acting unilaterally. The notation made at the time on the bäck of the indictment by the clerk and signed by the Judge reads "Fred Davis withdraws plea of guilty and reinstates plea of not guilty."

The Judge was justified in interpreting defendant Davis' attorney's remarks as withdrawal of the plea. Having asked that the defendant be committed to NACC, the attorney said, "if not Judge, I'm going to request that the minutes, the hearing be held do novo." This was a reference, of course, to the suppression minutes and hearing. There would be no point to starting a new suppression hearing if defendant's plea of guilty still stood.

The Judge said that he was granting "the application to withdraw the plea of guilty." "Notably, the attorneys did not object or move to correct the record". (People v Jackson, 52 AD2d 1038 [1976].) Instead, defendant's attorney asked that the case proceed immediately.

A major purpose of requiring a party to make known his objection to an action by the court is so that the court shall have "an opportunity of effectively changing the same." (Cf. CPL 470.05, subd 2.) If the defendant's attorney at that point had thought and said that he had not made an application to withdraw the plea of guilty, there can be no doubt that the court would have required him to say whether he was or was not moving to withdraw the plea. Defendant's attorney did not suggest in any way to the court that the court's interpretation was incorrect. But now appellate counsel reading the cold record urges us to interpret what took place in a way different from what the parties understood at the time.

If the court had unilaterally and improperly purported to set aside a plea of guilty, the defendant would have had a defense of previous prosecution to any further proceedings (CPL 40.30, subd 1, par [a]) which would be the subject matter of a motion in the trial court to dismiss the indictment (CPL 210.20, subd 1, par [e]). "The jeopardy claim, amounting to a collateral attack upon the prosecution, is treated in the CPL as a contention to be advanced upon a pre-trial motion to dismiss the indictment (CPL § 210.20 [1e])". (Practice Commentary in McKinney's Cons Laws of NY, Book 11A, CPL 220.10,

p 406.) Alternatively there was the "traditional remedy" of an article 78 proceeding in the nature of prohibition. *(Matter of Kraemer v County Court,* 6 NY2d 363, 365 [1959]; *Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560, 564 [1975].) Defendant neither moved to dismiss nor instituted an article 78 proceeding.

Plainly, rather than be sentenced to something more than one year imprisonment, defendant chose to gamble on a trial. His attorney said so explicitly at the time of sentence after the conviction, referring to the plea of not guilty as a "gamble" with the "odds" changed by the hearing testimony so as to make "the entry into the gamble far more attractive." The "entry into the gamble" *after* the hearing testimony could only refer to the withdrawal of the plea of guilty.

Having lost the gamble despite the attractiveness of the odds, defendant through his appellate counsel has nothing to lose by urging that the gamble should be disregarded and that he should be reinstated to the position before he chose to gamble. In this respect, the situation is quite similar to that in *People v Mussenden* (308 NY 558, 564-565 [1955]): "Now that the issue had been resolved against the defense, appellate counsel—who represents Mussenden by assignment of this court and who has undertaken his task with ability and imagination—may, with complete safety to appellant, speculate at length upon a whole series of hypotheses * * * It is, of course, understandable why trial counsel did not argue in that way upon the trial before the case was submitted to the jury. And we suspect that the defendants would have been quite dismayed, while the verdict was still in doubt" (if trial counsel had argued as appellate counsel now did).

Both defendants moved to exclude any evidence of prior convictions of the defendants on cross-examination if the defendants testified. The court denied the motions and both defendants urged error.

The case was tried before the decision of the Court of Appeals in *People v Sandoval* (34 NY2d 371, 378 [1974]) which "sets some boundaries to the scope of cross-examination permitted in the past".

We think the court exercised and did not abuse its discretion and that a reversal is not warranted. Defendant Davis had what the court at sentence called "an extensive criminal background." These crimes, as brought out in connection with the motion, included assault and robbery, a grand larceny

automobile arrest which had apparently resulted in a felony conviction for which he served time in State prison, possession of drugs, resisting arrest, and criminal, sale of dangerous drugs.

Even since the *Sandoval* decision, the Court of Appeals has stated: "The extent to which disparaging questions, not relevant to the issues, but bearing on the credibility of a witness, may be put upon cross-examination is discretionary with the trial court and its rulings are not subject to review, unless it clearly appears that the discretion has been abused". *(People v Duffy,* 36 NY2d 258, 262-263 [1975].)

Although the Trial Judge obviously did not have the benefit of the Court of Appeals' decision in *Sandoval,* rendered a year after trial, it is plain that he did exercise discretion. He discussed the considerations each way that bear on cross-examination of a defendant as to prior convictions. He inquired as to the specific crimes of which the defendants had been convicted. And he explicitly stated that his ruling did not go beyond what he understood the crimes to be.

Plainly, the crimes did reveal "a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interest of society" *(People v Sandoval, supra* p 377). Plainly, the robbery and auto charges were "crimes or acts of individual dishonesty, or untrustworthiness (e.g., offenses involving theft * * *)" which the Court of Appeals recognized "will usually have a very material relevance, whenever committed."

In the *Sandoval* case, the court said (p 378): "In each case the defendant shall inform the court of the prior convictions and misconduct which might unfairly affect him as a witness in his own behalf. The trial court in its discretion and in the interests of justice shall then determine whether and to what extent the particular defendant has met his burden, and it is his, of demonstrating that the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion."

The defendants, instead of informing the court of their prior convictions and misconduct, actually misrepresented the extent of their prior convictions and misconduct, apparently even to their own lawyers. It was the District Attorney who

had to point out that the lawyers were wrong in saying there were no crimes of moral turpitude and only drug offenses.

We do not think either that the trial court abused its discretion or that the defendants met their burden of demonstrating that the prejudicial effect of admission "of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion."

## *People v George*

The major contention here by the defendant George relates to the denial of the motion to exclude cross-examination as to prior convictions. The discussion of this point with respect to defendant Davis sufficiently covers the matter. We add only that in George's case, the previous crimes in addition to drug charges included a grand larceny auto charge for which he received a reformatory sentence and a youthful offender adjudication for what would otherwise have been a conviction for assault in the third degree arising out of an alleged forcible sodomy. (The court stated that he would not allow cross-examination as to the fact of the youthful offender adjudication, as distinct from cross-examination as to the underlying facts.) There was also a charge of possession of a dangerous weapon, as to which the District Attorney did not know whether there had been a conviction and the defendant did not enlighten the court.

The remaining points urged on appeal do not merit reversal and need not be discussed.

The judgments of the Supreme Court, Bronx County (J. SULLIVAN, J.), rendered June 1, 1973, convicting defendants of criminal sale of a dangerous drug in the third degree and criminal possession of a dangerous drug in the fourth degree and sentencing each to concurrent indeterminate seven-year terms on each count, should be affirmed.

MURPHY, J. P. (dissenting). Both defendants were convicted as a result of a single incident—the alleged sale of four glassine envelopes containing heroin to an undercover officer for $19. Only the undercover officer and his "back-up man" testified at the trial. Neither defendant presented any evidence on his own behalf.

At the inception of the trial, each defendant moved to

prohibit the prosecutor from cross-examining him about his prior convictions should he take the stand.

George was primarily concerned with his prior convictions for three drug sales and Davis with a conviction for criminal sale and a conviction for criminal possession. Both were also convicted of other crimes, but it is the refusal of the trial court to preclude cross-examination on the prior drug convictions that I deem prejudicial, reversible error; particularly where, as here, absent an alibi witness or an eyewitness to the occurrence other than the asserted participants, the People's evidence could not be refuted.

Concededly, New York has long permitted witnesses, including defendants, to be cross-examined with respect to criminal acts which are probative of their credibility as a witness. *(People v Webster,* 139 NY 73; *People v Sorge,* 301 NY 198; *People v Kass,* 25 NY2d 123.) However, in recent years greater concern has been given to the prejudicial effect this rule, if unrestricted, has on a defendant. (See, for example, *People v Schwartzman,* 24 NY2d 241, cert den 396 US 846.) Finally, full recognition of the need to strike an appropriate balance "between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf", was clearly enunciated. *(People v Sandoval,* 34 NY2d 371, 375.)

The Trial Justice in the instant pre-*Sandoval* case deemed himself bound by *People v Sorge (supra).* We are not so constrained and should significantly note that the procedure recommended in *Sandoval* was substantially followed here. (Cf. *People v Duffy,* 44 AD2d 298, affd 36 NY2d 258.)

Admittedly, there is language in *Sandoval* which seemingly supports both the prosecutor's and the defendants' respective contentions. The prosecutor fastens on to the statement that a defendant may be cross-examined concerning any immoral act revealing his willingness or disposition "to place the advancement of his individual self-interest ahead of principle or the interests of society [and] proof thereof may be relevant to suggest his readiness to do so again on the witness stand." *(People v Sandoval, supra,* p 377.)

However, more relevant to this case, and, in my view, dispositive of the issue presented here, are the statements which appear later in said opinion:

"From another aspect, cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility. Thus; in the prosecution of drug charges, interrogation as to prior narcotics convictions (unless proof thereof is. independently admissible) may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders * * *.

"In weighing prejudice to the defendant's right to a fair trial, an important consideration may be the effect on the validity of the fact-finding process if the defendant does not testify out of fear of the impact of the impeachment testimony for reasons other than its direct effect on his credibility—as where the defendant would be the only available source of material testimony in support of his defense." (pp 377-378.)

In light of the foregoing, since the trial court's denial of the motions to preclude cross-examination regarding prior drug convictions may have effectively denied defendants a fair trial, I vote to reverse the instant conviction and remand for a retrial at which the People should be precluded from introducing any evidence relating to defendants' prior drug convictions.

LUPIANO, BIRNS and NUNEZ, JJ., concur with SILVERMAN, J.; MURPHY, J. P., dissents in an opinion.

Judgments, Supreme Court, Bronx County, each rendered June 1, 1973, affirmed.