OPINION OF THE COURT
Fuchsberg, J.
Fred Davis and Alexander George have been found guilty of selling four glassine envelopes of heroin to an undercover police officer for $19 and of concomitantly possessing 11 additional envelopes containing the same drug. Each defendant has been sentenced to two concurrent indeterminate terms of imprisonment not to exceed seven years. The Appellate Division, First Department, Presiding Justice Francis T. Murphy dissenting, has affirmed.
We focus on two of the issues raised on this appeal.[1] One is the claim that defendants were denied a fair trial when the trial court denied motions to preclude cross-examination on their prior convictions. The other is that it was prejudicial error for a so-called UF 61 report — containing the undercover officer’s officially filed description of his reasons for making the arrests — to be received in evidence on the theory that his testimony at trial had been attacked as a recent fabrication.
The first issue presents no doctrinal difficulty. Determination of the extent to which an accused may be cross-examined concerning previous criminal convictions requires a "sensitive, informed reconciliation of the interests of the People and the rights of the defendant” (People v Sandoval, 34 NY2d 371, 375). At least two competing legal values are at stake: *274 The People’s interest in exploring the veracity of a witness, including an accused, must be balanced against the risk that the presumption that a defendant is innocent may go by the board solely because of a jury’s natural tendency to conclude, despite limiting instructions, that a defendant who has committed previous crimes is either the kind of person likely to have committed the crime charged or is deserving of punishment in any event (see People v Mayrant, 43 NY2d 236; People v Dickman, 42 NY2d 294, 297; Griswold, The Long View, 51 ABAJ 1017, 1021; McGowan, Impeachment of Criminal Defendants by Prior Convictions, 1970 Ariz State LJ 1; statistical support can be found in Kalven & Zeisel, The American Jury, pp 124, 126-130, 144-146, 160-162).
These opposing forces, however, are easier to comprehend than to apply. Required, therefore, is the exercise of a sound discretion on the part of the Trial Judge.
In the present case, before the openings to the jury both defendants’ counsel invoked that discretion. They moved for an informational ruling setting limits on the District Attorney’s cross-examination as to their clients’ earlier criminal offenses. The motions were directed to two unenviable records. Davis’ police dossier listed two convictions for assault and robbery antedating the crime for which he was on trial by six and seven years respectively, another for driving while intoxicated, yet another for grand larceny committed about four years before the trial, and, finally, two more recent episodes (occurring within two years) one of which was highlighted by possession and the other by sale of drugs. George’s pedigree was shorter but spread over more years. It included a 13-year-old sodomy charge which had resulted in a youthful offender adjudication for assault and a conviction for grand larceny only a year later; in the ensuing 12 years his only reported offenses were one instance of gambling and, most recently, three drug sales.
The Trial Judge, deferring decision, indicated generally that, as "just a trooper [in] the field”, he would "stand on what the highest court of [the] state holds.” When pressed for a determination upon renewal of the motions at the end of the People’s case, the Judge denied them while expressing the view that he was "barred” from exercising discretion unless the prior crimes were extremely similar as to modus operandi or "if the cross-examiner brings out every dirty detail only to inflame [the] jury”. The court thus made clear that any *275 restraints it might thereafter impose would not preclude the cross-examiner from resorting to any of the prior crimes but would only apply to future and undescribed excesses if and when they occurred. Defendants thereupon informed the court they would rest "because of [this] ruling.” They did not take the stand.
As we read the record as a whole, we are compelled to conclude that the court did not exercise the requisite discretion. Its wholesale rejection of defendants’ applications was not the result of an assessment of the probative relevancy of each conviction or of its potential for impermissible prejudice, or of whether and to what extent each outweighed the other. It made no effort to distinguish between the two cases. Vocally at least, it gave no thought to the possibility of limiting multiple convictions as an available means to lessen the likelihood that inferences of propensity might outbalance the need to expose lack of veracity.
True the ruling here was made considerably before we handed down People v Sandoval (34 NY2d 371, supra), where we articulated the concerns which permeate such considerations. And apparently the court labored under the mistaken impression that our earlier decision in People v Sorge (301 NY 198) permitted it to restrict cross-examination as to previous crimes in no instances other than those where the previous crime or a uniform history of offenses was similar to those charged.
Sandoval did not create a new rule of substantive law. In sanctioning a procedural device for the early exercise of a discretion already extant in the trial courts (see People v Caviness, 38 NY2d 227, 233; but cf. People v Zabrocky, 26 NY2d 530, 535), it looked to the more efficacious accommodation on a case-by-case basis of jurisprudential considerations whose existence had long been recognized (e.g., People v Schwartzman, 24 NY2d 241, 247, cert den 396 US 846; People v Sorge, supra, pp 201-202; People v Webster, 139 NY 73, 84; People v Tice, 131 NY 651, 657-658; People v Duffy, 44 AD2d 298, 301 [Shapiro, J.], affd 36 NY2d 258, cert den 423 US 861).
Here scant attention was paid to the nature of the varied offenses.[2] The probative value of specific convictions for crimes *276 whose nature was self-evident were not evaluated on the issue of credibility. For instance, the effect of a factor such as the age of each of the older convictions, which, while not necessarily determinative of a court’s discretion, might be found to have diminished in probative value with the passage of time, was not explored. Also, though proof of the commission of prior offenses similar to those for which a defendant is tried demands close scrutiny, defendants’ prior drug offenses received no meaningful attention; indeed, the court expressly refused to consider them separately, insisting "I am not going to draw a distinction”. As Justice Murphy’s dissent at the Appellate Division aptly points out, this void in exercising discretion is all the more glaring since the matching crimes here involved violations of the narcotics law, whose offenders are widely believed to be unusually habitual in their practices (People v Sandoval, supra, pp 377-378; see, also, People v Carmack, 44 NY2d 706.)
Under the circumstances, it cannot be said that the default in exercising discretion did not have an effect disproportionate to its probative worth on the issue of credibility. Nor can we gainsay the assertion that it deterred the defendants from taking the witness stand. The entire defense was based upon a claim that the case was a "frame-up” against individuals whose unsavory records made them easy prey. Whatever the merits of that theory, its chance of success as a practical matter was reduced to nought by their failure to testify. The blanket rejection of their applications thus had a tendency to impair the fact-finding process.
Consequently, there should be a new trial (People v Mayrant, 43 NY2d 236, supra; People v Dickman, 42 NY2d 294, 298, supra; People v Caviness, 38 NY2d 227, 233, supra). In so deciding, we do not now undertake to determine how the cross-examination of the appellants should be circumscribed. On remand, it will be for the Trial Judge upon full exercise of his sound discretion to make an appropriate disposition of their application (see People v Mayrant, supra, pp 239-240).[3]
We turn now to the second issue. It is premised on the following trial event:
*277 The undercover officer, during his direct examination by the People, swore that he paid $19 for the heroin. He also testified that the UF 61 report, which was marked for identification while he was on the stand, was the source of his recollection. During cross-examination, the defense, pursuing its theory that the entire case was concocted, developed the fact that, both during a preliminary hearing and before the Grand Jury the officer repeatedly testified that he had made the purchase with a single $20 bill and not with at least six bills, the minimum number aggregating that sum.
On redirect, the People, over objection, were permitted to introduce the document into evidence expressly on the ground, urged by the prosecution alone, that the witness’ story had been attacked as a recent fabrication. The report, shown to the jury without limiting instructions, contained a statement that the officer had received $19; it also otherwise confirmed his testimonial version of the events leading to the arrests. The defense takes the position that the recent fabrication rule is inapplicable because the report was not made prior to the time when a motive to falsify arose and therefore its admission into evidence constituted nothing more than an impermissible and prejudicial bolstering of the witness by means of his own prior self-serving statement.
It is now firmly settled in this State that an impeached witness cannot be rehabilitated by his antecedent consistent statements unless the cross-examiner has created the inference of, or directly characterized the testimony as, a recent fabrication (Crawford v Nilan, 289 NY 444; People v Williams, 62 AD2d 1026). In such instances only, prior consistent statements made at a time when there was no motive to falsify are admissible to repel the implication or charge (People v Gilliam, 37 NY2d 722, revg on dissent at 45 AD2d 744; People v Coffey, 11 NY2d 142, 146; People v Singer, 300 NY 120 [Desmond, J.]; cf. People v Mirenda, 23 NY2d 439, 451-453).
Unlike the standard prevailing in some jurisdictions (e.g., State v Bethea, 186 NC 22), not every inconsistency developed on cross-examination triggers the exception (see People v Forest, 50 AD2d 260, 262 [Stevens, P.J.]). As our court has defined the term "recent fabrication”, it "means * * * that the defense is charging the witness not with mistake or confusion, but with making up a false story well after the event (see Commonwealth v. Retkovitz, 222 Mass. 245, 250). 'Recently fabricated’ means the same thing as fabricated to *278 meet the exigencies of the case” (People v Singer, supra, p 124).
In the case before us, the only questions on cross-examination addressed to motive to fabricate related to a fabrication of the entire case from, and perhaps before, its very inception. This was consistent with the theory of the defense. Since its attack was readily interpretable as a claim that the arrests were made in furtherance of a plan to bring trumped up charges, for the prior consistent statement to have been admissible it would have to have been shown that it preceded the making of the plan. But there was no such showing. The UF 61, as a postarrest police report, could not have been made prior to the time when the charged motive to falsify arose (People v Branch, 34 AD2d 541). Consequently, it was irrelevant (see People v Carter, 52 AD2d 829, 830; cf. People v Moore, 26 AD2d 954).
As indicated, the bolstering range of the erroneously received report went much beyond the discrepancy in dollars. It also appears that the bills themselves were not vouchered, that their serial numbers were not recorded and that they were not retained as evidence. And the witness’ fellow officer, who was observing the transaction in a "back-up” capacity, testified that he did not observe any exchange of money at all. The error, therefore, by no means was harmless.
For the reasons stated, on both grounds, the orders of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Orders reversed, etc.

. In the courts below, appellants had pressed a double jeopardy claim premised on previous pleas to attempted criminal possession of a dangerous drug in the fourth degree (former Penal Law, § 220.15, L 1969, ch 788; Penal Law, § 110.05). After the trial court indicated that, because of the probation report, it would not follow the District Attorney’s recommendation as to sentence, the pleas were vacated. The Appellate Division unanimously found that the court did not act "unilaterally” in setting the pleas aside and in effect had acted on defendants’ consent (54 AD2d 410). That point has been abandoned on the appeal to this court.

. The only exception was recognition that a youthful offender adjudication may not be shown to affect a witness’ credibility (People v Cook, 37 NY2d 591, 595; People v Vidal, 26 NY2d 249, 253).

. While there is no requirement that a motion to limit cross-examination on prior convictions be made at any particular juncture of a trial, it is evident that when, as here, it is made early in the proceedings, to defer a ruling until the very threshold of the defendant’s case may present a handicap to the preparation of the defense and to put it off until after "excesses” have taken place unnecessarily creates a danger that by then irretrievable prejudice may have already occurred.