Jones, J.
We affirm the order of the Appellate Division. In doing so we take the occasion to approve and comment on the procedure made available to defendant in this case to obtain a prospective ruling limiting the prosecutor’s reference, in cross-examination impeachment of defendant, to prior specific criminal, vicious and immoral acts.
This defendant was indicted for common-law murder. Immediately prior to selection of the jury, counsel for defendant made a motion to the trial court requesting it, in its discretion, to prohibit the use of prior crimes or convictions to impeach the credibility of defendant if he decided to testify. The trial court then considered the various prior charges against defendant and the crimes of which defendant had been convicted to the extent they were then made known to the court. The trial court ruled that the District Attorney could use a 1964 conviction of disorderly conduct and a 1965 conviction of assault in the third degree and could inquire as to the underlying facts with respect to either. At the same time the court ruled that he would not permit use of a 1960 charge of contributing to the delinquency of a minor, 1963 and 1965 convictions of driving while intoxicated, a 1965 arrest for felonious assault resulting in dismissal, a 1965 traffic violation, and a 1967 charge of gambling. We agree with the Appellate Division that there was no abuse of discretion in these rulings. We find no merit in the other contentions advanced on behalf of defendant, and accordingly we afiirm his conviction.
It is appropriate, however, to consider the procedural and substantive rights of a defendant to obtain a prospective ruling as to the permissible scope of his cross-examination concerning prior commission of specific criminal, vicious and immoral acts, on the basis of which, inter alia, he will decide whether to take the witness stand in his own defense.[1]
*374 Initially we note that CPL 60.40 (subd. 1), while relevant to the subject under consideration, now merely authorizes the introduction, by way of contradiction, of independent proof of a prior conviction in the event of the denial of such conviction by the defendant or any other witness. It “is not addressed to questions of when and to what extent a defendant may be cross-examined concerning prior convictions ” (Denzer, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 60.40, p. 256). Section 2444 of the former Penal Law (which was in effect repealed by the Revised Penal Law effective September 1, 1967), by contrast was addressed to the scope of cross-examination as well as of independent proof and embraced the conviction of any crime but explicitly excluded conviction for a traffic infraction. (Cf. People v. Sorge, 301 N. Y. 198.)
The nature and extent of cross-examination have always been subject to the sound discretion of the Trial Judge (People v. Schwartzman, 24 N Y 2d 241, cert. den. 396 U. S. 846). We now hold that in exercise of that discretion a Trial Judge may, as the Trial Judge in this case did, make an advance ruling as to the use by the prosecutor of prior convictions or proof of the prior commission of specific criminal, vicious or immoral acts for the purpose of impeaching a defendant’s credibility (cf. People v. Duffy, 44 A D 2d 298; see People v. Palmeri, 58 Misc 2d 288; United States v. Puco, 453 F. 2d 539; United States v. Palumbo, 401 F. 2d 270, cert. den. 394 U. S. 947; Gordon v. United States, 383 F. 2d 936; Luck v. United States, 348 F. 2d 763)* [2].
*375 As we wrote in People v. Schwartzman (supra, at p. 247): “ The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. "When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded.” Thus, a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant’s credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf.
The particular limitations of proof must always depend on the individual facts and circumstances of each case. Such determination will best be made by the trial court. The procedural vehicle therefor would be a motion, accompanied in rare instances, in the discretion of the Judge to whom the motion is made, by an appropriate evidentiary hearing. The defendant should be free (but not subject to compulsion) to give relevant and material proof, in affidavit form or in person, and, of course, such proof may never be introduced on trial or otherwise used against him in the pending case.
In most cases, as in this case, but not necessarily in all cases, a pretrial motion will be preferable. (Cf. People v. Zabrocky, 26 N Y 2d 530, 535.) Thereby, the defendant with definitive advance knowledge of the scope of cross-examination as to prior conduct to which he will be subjected, can decide whether to take the witness stand. Revelation of the impeachment testimony and announcement of the trial court’s ruling in advance of trial are consistent with the objectives today of broad pretrial discovery and disclosure.
The sensitive, informed reconciliation of the interests of the People and the rights of the defendant must here as in other instances, be committed principally to the reviewable discretion of the trial court, to be exercised in the light of all the facts and relevant circumstances disclosed in the given case. We do riot suggest that precise guidelines can be laid down. A *376 frame of reference may be described, however, within which the responsibility of ad hoc discretion should be exercised. Such frame of reference should be understood as illustrative and suggestive rather than categorical or mandatory.
In the fact-finding process, the function, in cross-examination, of evidence of a defendant’s prior criminal, vicious or immoral acts (unless such evidence would be independently admissible to prove an element of the crime charged) is solely to impeach his credibility as a witness (People v. Webster, 139 N. Y. 73; Richardson, Evidence [10th ed.], § 498). From the standpoint of the prosecution, then, the evidence should be admitted if it will have material probative value on the issue of defendant’s credibility, veracity or honesty on the witness stand. From the standpoint of the defendant it should not be admitted unless it will have such probative worth, or, even though it has such worth, if to lay it before the jury or court would otherwise be so highly prejudicial as to call for its exclusion. The standard — whether the prejudicial effect of impeachment testimony far outweighs the probative worth of the evidence on the issue of credibility — is easy of articulation but troublesome in many cases of application.
At the threshold it must be recognized as inevitable, and thus not determinative, that evidence of prior criminal, vicious or immoral conduct will always be detrimental to the defendant. Similarly, it does not advance analysis to note that such evidence will have a propensity to influence the jury or the court; that objective and purpose attend the introduction of all evidence. The issue to be resolved has a double aspect in determining whether the defendant will be deprived of a fair trial. Will the testimony to be elicited in cross-examination have a disproportionate and improper impact on the triers of fact? Will the apprehension of its introduction undesirably deter the defendant from taking the stand and thereby deny the jury or court significant material evidence?
Evidence of prior specific criminal, vicious or immoral conduct should be admitted if the nature of such conduct or the circumstances in which it occurred bear logically and reasonably cm the issue of credibility. Lapse of time, however, will affect the materiality if not the relevance of previous conduct. The commission of an act of impulsive violence, particularly *377 if remote in time, will seldom have any logical bearing on the defendant’s credibility, veracity or honesty at the time of trial. Further, proof of such a crime may be highly prejudicial and inadmissible when it “ has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged ” (People v. Schwartzman, supra, p. 247). To the extent, however, that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand. A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity. On the other hand, crimes or conduct occasioned by addiction or uncontrollable habit, as with alcohol or drugs (again, unless independently admissible to prove an element of the crime charged, see People v. Calvano, 30 N Y 2d 199), may have lesser probative value as to lack of in-court veracity (cf. United States v. Puco, 453 F. 2d 539, supra).
Commission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness (e.g., offenses involving theft or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, whenever committed. By contrast, questions as to traffic violations should rarely, if ever, be permitted. (Compare former Penal Law, § 2444 with CPL 60.40, subd. 1, and new Penal Law, § 10.00, subds. 2, 3.)
From another aspect, cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility. Thus, in the prosecution of drug charges, interrogation as to prior narcotics convictions (unless proof thereof is independently admissible) may present a special risk of impermissible prejudice because of the widely *378 accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders (United States v. Puco, 453 F. 2d, at p. 542, n. 9). On the other hand, proof of prior convictions of perjury or other crimes of individual dishonesty should usually be admitted on trial of another similar charge, notwithstanding the risk of possible prejudice, because the very issue on which the offer is made is that of the veracity of the defendant as a witness in the case.
In weighing prejudice to the defendant’s right to a fair trial, an important consideration may be the effect on the validity of the fact-finding process if the defendant does not testify out of fear of the impact of the impeachment testimony for reasons other than its direct effect on his credibility — as where the defendant would be the only available source of material testimony in support of his defense.
Obviously there are other relevant factors and considerations, to be Identified and refined in the vitality and sagacity of the common-law process. In each case the defendant shall inform the court of the prior convictions and misconduct which might unfairly affect him as a witness in his own behalf. The trial court in its discretion and in the interests of justice shall then determine whether and to what extent the particular defendant has met his burden, and it is his, of demonstrating that the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion.
This case reflects a recognition of the principles underlying broadened discovery in criminal procedure and a growing awareness that there may be undue prejudice to a defendant from unnecessary and immaterial development 'of previous misconduct. To that extent therefore it sets some boundaries to the scope of cross-examination permitted in the past (cf. People v. Sorge, 301 N. Y. 198, supra).
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler and Stevens concur; Judge Rabin taking no part.
Order affirmed.

. We do not refer here to the extent to which independent, direct proof of previous criminal, vicious or immoral acts on the part of the defendant may be admissible either to rebut character evidence introduced by the defendant or to establish material elements of the crime charged within the holdings of People v. Molineux (168 N. Y. 264) and its progeny. Such issues are distinct and involve considerations and factors with which we are not now concerned. *374 We only observe, ás we indicated in People v. Schwartzman (24 N Y 2d 241) that procedural orderliness would generally mandate that Molineux. evidence be adduced by the prosecution during its direct ease (pp. 249-250). The procedures we discuss below have nothing to do with such evidence or with the proffer of inquiry or evidence with respect to such acts admissible under the rule of the Molineux and Schwartzman cases even if precluded for the more limited purpose of attacking credibility.

. We note that the so-called Luck doctrine has now been replaced by a statute in the District of Columbia (D. C. Code, 1967, § 14-305 [Supp. IV, 1971, pp. 276-277]). For the discretionary determination by the Trial Judge there has been substituted a categorical rule which, subject to a 10-year exclusion for remoteness, allows impeachment by any felony conviction, but limits impeachment bv misdemeanors to crimes involving dishonesty or false statement.