Cooke, J.
Not only does a defendant have a constitutional right to a fair trial, but such right is fundamental to our whole system of jurisprudence. We hold that this defendant, Lawrence Wright, was deprived of such a right by virtue of various remarks made in the course of the People’s summation and that he should have a new trial.
Along with Ronald Diamond, defendant was indicted for criminal possession of a dangerous drug in the third degree, for which crime he was ultimately found guilty and sentenced. Prior to defendant’s trial, Diamond pled guilty to criminal possession of a dangerous drug in the sixth degree and was sentenced.
At trial, Patrolman Anderson, the People’s sole witness, testified that during the evening of January 21, 1971, he observed defendant and Diamond drive to a gas station at Linden Boulevard and Van Wyck Expressway in Queens County. From his patrol car and with the aid of binoculars, Anderson observed various people approach the vehicle in which defendant was seated and "lean into the car” with the money. Anderson and his partner, Patrolman Balf, followed the car driven by Diamond as it left the gas station and proceeded to 135th Street and Liberty Avenue where the car pulled to the curb. As Anderson got out of his unmarked car, he was approached by Diamond who asked him what was wrong. Anderson observed Diamond drop manila envelopes on the ground and the officer eventually recovered four bags from the ground around Diamond. One bag was opened and Anderson saw marijuana in it. While Diamond was being placed under arrest, Balf kept a watch on defendant, still seated on the passenger side of the automobile. While Wright was in the automobile, Anderson saw in "just about the back of the car on the very end of the console” a large piece of tin foil containing what he believed to be a half brick of marijuana. It was stipulated that if a laboratory technician were called as a witness he would testify that he discovered slightly more than two ounces of marijuana within the tin foil package.
*174 Defense counsel, toward the conclusion of his summation, called the jury’s attention to the People’s failure to call Officer Balf as a witness despite his presence in the courtroom. The Assistant District Attorney turned to this subject at the beginning of his summation and stated: "The People don’t have a burden of calling every witness if every witness is just going to come in and repeat the testimony of his brother officer. I don’t feel that it is necessary. I don’t want to encumber you and bring in that witness.” Upon objection, the court stated: "I will allow that. It is an inference that he is asking the jury to draw.” The prosecutor then remarked that if defense counsel had "so wished, he could have called” Balf as a witness and, upon further objection, the court said "The statement is a fair comment. However, I again advise the jury that the defendant is not obligated to call any witnesses.”
The prosecuting attorney later referred to defendant as: "Mr. Wright, an admitted drug user, an admitted drug addict, hanging out in a drug area which he knew was a drug area.” Upon objection, trial court informed the jury: "It is the jury’s recollection of what the testimony is in connection with the case; not what the counsel says it is.”
The following colloquy then transpired:
"Mr. Katz [Assistant District Attorney]: Mr. Wright comes and takes the stand. You didn’t expect him to tell us that he knew what was in the car. Of course he is going to say he didn’t know what was in the car. Do you believe him? Here he is a drug addict who went into a drug program in '69. He gets arrested for this case in '71. In '72 he gets arrested again where he pleads guilty to possession of a hypodermic instrument. He is apparently still a drug addict.
"We know what he was doing in that gas station. We know when we heard the evidence of Ptl. Anderson, that several people approached them and engaged in conversation, he was probably selling marijuana to support his drug habit.
"Mr. Tierney [defense counsel]: I object, Your Honor; that is inflammatory bias and it is grounds for a mistrial.
"The Court: It is for the jury to infer from the evidence that they heard.
"Mr. Katz: Does Mr. Wright work? No. Yet he has money for drugs.
"Mr. Tierney: I object, Your Honor. Once again, Mr. Katz is trying to inflame the jury.
*175 "The Court: Yes. There is no testimony. Please stay away from that.”
Toward the very end of his summation, the prosecutor asked that the jurors place before themselves this question: "[Wjhether you can believe that this defendant did not know that he had marijuana in that car. Where else did that marijuana come from where one had pleaded guilty to it and another defendant admits that he is an addict.” When the summation had been completed, a motion for a mistrial was made based on "inflammatory and prejudicial remarks.”
Although "a defendant who chooses to testify may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable basis in fact * * * the law is inflexibly set against questioning as to such acts when the obvious intent is to show from character or experience a propensity to commit the crime for which defendant is on trial” (People v Duffy, 36 NY2d 258, 262, cert den 423 US 861). Thus, under these basic principles, it would have been perfectly proper for the prosecutor to discuss defendant’s drug addiction and his conviction for attempted possession of a hypodermic instrument, as these matters pertained to defendant’s credibility, but it was highly improper, without a shred of evidence that defendant ever engaged in selling, to urge that because of the addiction "he was probably selling marijuana to support his drug habit” on the night in question. The Assistant District Attorney had no right to refer to matters not in evidence or to ask the jury to draw such a conclusion which was not fairly inferrable from the evidence (People v Ashwal, 39 NY2d 105, 109-110). The use of defendant’s conviction in reference to the hypodermic instrument as a predicate for the proposition that defendant was a seller was prejudicial, it having been noted previously that "in the prosecution of drug charges, interrogation as to prior narcotics convictions (unless proof thereof is indepedently admissible) may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders” (People v Sandoval, 34 NY2d 371, 377-378). Here the prosecutor utilized defendant’s conviction and addiction as proof of a propensity to sell, a crime not charged and for which there was no evidentiary support. The prejudicial nature of these inflammatory remarks was intensified by *176 comments that: "He is apparently still a drug addict”; "Does Mr. Wright work? No. Yet he has money for drugs.” Although defendant lived with his mother and was unemployed, there is nothing in the proof to suggest or prove that he had to resort to criminal activity to obtain money. Neither was there any dissipation or even alleviation of the harmful effects of the arguments by statements from the court that the comments were improper and must be completely disregarded (see People v Ashwal, 39 NY2d 105, 111, supra).
The prosecutor’s rhetorical query of "Where else did that marijuana come from where one had pleaded guilty to it and another defendant admits that he is an addict” was also objectionable. Although a codefendant’s plea of guilt might be admissible on the question of credibility if the codefendant takes the stand in defendant’s trial, that plea has no probative value as to defendant’s guilt. In the absence of a proper explanation, this statement, too, was prejudicial (see People v Colascione, 22 NY2d 65, 73). None of this is to suggest that a prosecutor may not argue all relevant circumstances tending to support the statutory presumption of possession (Penal Law, § 220.25) but, he may not rely on incompetent matter such as another participant’s plea of guilty.
Proof of the commission by defendant of the crime charged depended for all practical purposes solely on the testimony of Patrolman Anderson. Patrolman Balf acted jointly with Anderson and, under the circumstances here, particularly the impeaching and uncertainties developed on the cross-examination of Anderson, Balf s testimony would not have been cumulative or trivial (see People v Brown, 34 NY2d 658). Defense counsel had the right during his summation to comment concerning Balf s absence but the prosecutor had no right to respond by asserting that he did not "want to encumber” the jury and that the People don’t have to call every witness if the witness "is just going to come in and repeat the testimony of his brother officer” (see People v Thomas, 43 AD2d 547; cf. People v Lovello, 1 NY2d 436). This error, under the circumstances, was compounded by the denial of defense counsel’s request for a charge that the jury could infer that Patrolman Balfs testimony would not have strengthed the People’s case (see People v Brown, 34 NY2d 658, 660, supra; see, also, People v Valerius, 31 NY2d 51, 55).
The order of the Appellate Division should be reversed and a new trial ordered.
*177 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.