■ In the Matter of CAPITAL NEWSPAPERS DIVISION OF THE HEARST CORPORATION et al., Petitioners, v JOHN J. CLYNE, Individually and as Judge of the County Court of the County of Albany, et al., Respondents. — Proceeding pursuant to CPLR article 78 (brought on in this court [CPLR 506, subd (b), par 1]) to declare unlawful the holding of a closed *Sandoval* hearing conducted during a criminal trial, without affording petitioners an opportunity to be heard in opposition. During the July, 1980 term of the Albany County Court, the trial of James Bowles commenced with the Honorable John J. Clyne presiding. Bowles was charged with the crime of murder in the second degree in connection with the beating death of his wife. After the prosecution had rested, Judge Clyne is alleged to have requested petitioner Weber, a newspaper reporter, not to report the proceedings of a proposed *Sandoval* hearing. Petitioners allege that upon Weber's refusal, Judge Clyne left the bench and conducted the hearing in chambers in the absence of Weber, and subsequently refused either to permit petitioners' attorney to be heard or to conduct a hearing on the propriety of the closure of the *Sandoval* hearing. Following Bowles' conviction, petitioners were unsuccessful in their efforts to promptly obtain a transcript of the *Sandoval* hearing or to discuss the matter with Judge Clyne. This proceeding was commenced seeking a declaration that Judge Clyne acted in violation of lawful procedure, arbitrarily, capriciously, with abuse of discretion and in violation of both the United States Constitution and the Constitution of the State of New York. By written stipulation, this proceeding was discontinued as against respondent Greenberg, the District Attorney of Albany County. In his answer, Judge Clyne, in addition to denying the allegations in the petition, alleges that (1) the *Sandoval* hearing was not required to be open as the issue could have been determined as part of Bowles' omnibus motion, (2) prevention of undue prejudice to Bowles was wholly within the court's discretion, and (3) the proceeding is moot and academic. Contrary to respondent's contention, our courts have consistently entertained proceedings challenging closure orders, though technically moot, under the exception to the mootness doctrine *(Matter of Oneonta Star Div. of Ottaway Newspapers v Mogavero,* 77 AD2d 376, 380; *Matter of Capital Newspapers Group of Hearst Corp. v Brown,* 75 AD2d 218, 220-221). Nothing before us suggests that we should depart from this practice and, therefore, we pass to the merits. Recently the courts have been inundated with proceedings against Judges who have ordered closures of criminal trials. The propriety of the Judges' actions has been considered by the courts in cases involving pretrial suppression hearings *(Gannett Co. v De Pasquale,* 443 US 368), during trial suppression hearings *(Matter of Capital Newspapers Group of Hearst Corp. v Brown,* 75 AD2d 218, *supra),* and a pretrial mental competency hearing *(Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430). We are here concerned with the decision of the trial court to close a *Sandoval* hearing. We are unaware of any case where this precise issue was passed upon by a court and thus believe it to be one of first impression. Initially, we point out that a *Sandoval* hearing differs vastly from a suppression hearing or compe-

tency hearing. In a *Sandoval* proceeding it is only in rare instances that an evidentiary hearing is held *(People v Sandoval,* 34 NY2d 371, 375). It has been determined in one instance that it was an abuse of discretion for the trial court to insist upon a hearing, concluding that the defendant's affidavit was sufficient *(People v Batchelor,* 57 AD2d 1059). The purpose of a *Sandoval* hearing is to enable a defendant to obtain a prospective ruling as to the permissible scope of a cross-examination concerning his prior commission of specific criminal, vicious and immoral acts, on the basis of which he can decide whether or not to take the witness stand in his own defense *(People v Jones,* 76 AD2d 1007). Significantly, the acts pertain to defendant's prior conduct and he is necessarily aware of them. As a practical matter, the submission of an affidavit or memorandum to the court containing the pertinent information, together with an informal conference, is sufficient to enable the trial court, in most cases, to make a determination. To designate such a procedure as a hearing is actually a misnomer. In a *Sandoval* proceeding, defendant's prior convictions are revealed and the trial court determines if all or any of these convictions are inadmissible during the trial. The matter is often handled at a bench conference between Judge and counsel outside the hearing of the public and jury. If a juror were to gain knowledge of an inadmissible conviction through the media, it would be prejudicial to the defendant and possibly deprive him of a fair trial. A suppression hearing, on the other hand, serves an entirely different purpose. Such hearings are held to determine whether confessions, eyewitness identifications, contraband or wiretap recordings were legally obtained and thus admissible in evidence. The result is to screen out unreliable or illegally obtained evidence from the jury. Clearly, the public may have a real and legitimate interest in such a hearing sufficient to outweigh the risks of premature disclosure. A competency hearing is held to determine whether the defendant is mentally competent to stand trial. Again, an overwhelming legitimate public interest may be present. In our view, however, such is not the case where a *Sandoval* proceeding is involved. Therein the attention is not focused on prosecutorial or judicial irregularities. The public's concern is one of mere curiosity and we cannot discern any legitimate public interest being served by revealing to the public potentially inadmissible prior convictions of a defendant during trial. It has been determined that the First Amendment rights of the public and representatives of the press to attend criminal proceedings are not absolute *(Richmond Newspapers v Virginia,* 448 US 555, 581) and that each case will be resolved on the basis of its individual characteristics and merits *(Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 717-718). While the court has an obligation to protect the First Amendment rights of the press, its primary obligation is to assure the defendant a fair trial, free from damaging and prejudicial publicity and comporting with fundamental due process. In balancing these competing considerations, the court has a heavy burden to assure the defendant a fair trial. If necessary, it must take strong measures to ensure that the balance is never weighed against the accused. To accomplish this, the Trial Judge is granted broad discretion in ordering the daily activities of his court (see *United States v Gurney,* 558 F2d 1202, 1209, cert den *sub nom. Miami Herald Pub. Co. v Krentzman,* 435 US 968). Applying these principles to a *Sandoval* proceeding, we are of the view that the proscriptions against closure do not apply and that the trial court, with its broad discretion, did not violate petitioners' constitutional rights. Consequently, the petition should be dismissed. Petition dismissed, without costs. Mahoney, P. J., Sweeney, Kane, Casey and Weiss, JJ., concur.