OPINION OF THE COURT
Stuart Namm, J.
The defendant, Penelope Loizides, is charged in indictment number 801-84 with the commission of two counts of perjury in the first degree (Penal Law, §210.15, 210.20). Defendant moves to dismiss the instant indictment pursuant to CPL 210.35 (subds 4, 5) contending that (a) her testimony before the Grand Jury was interrupted by the prosecutor thereby denying her the opportunity to testify in the manner she wished; (b) the prosecutor asked improper questions of the defendant during her testimony before the Grand Jury; (c) the prosecutor openly displayed his hostility to the defendant during her testimony before the Grand Jury; and (d) the prosecutor, as the legal advisor to the Grand Jury, failed to properly instruct the Grand Jury with respect to the issue of defendant’s credibility. The last contention of the defendant has presented an *538 apparent question of first impression to this court, in the light of the prosecutor’s decision to impeach the credibility of the defendant before the Grand Jury through the use of alleged prior misconduct of the defendant.
In addition, defendant requests the dismissal of the indictment upon the further ground that the evidence adduced before the Grand Jury was not legally sufficient to sustain each count of the indictment. (CPL 210.30.)
An in camera examination of the stenographic transcript of the Grand Jury proceedings concerning the instant indictment was conducted. The court initially determines that the assistance of counsel is not required as an aid to the court in determining the issues raised by the application of the defendant.
This matter had been considered by a previous Grand Jury, and an indictment charging the defendant with perjury in the first degree was handed up and subsequently dismissed by this court on the grounds that the integrity of that Grand Jury’s deliberations had been impaired by the failure of the District Attorney to provide appropriate legal instructions to them. Leave was granted to resubmit the charge to another Grand Jury. The result thereof was the instant indictment.
INTERRUPTION OF DEFENDANT’S DIRECT TESTIMONY BY THE PROSECUTOR
Pursuant to the provisions of CPL 190.50 (subd 5), Penelope Loizides appeared and testified before the Grand Jury on May 11, 1984 in the presence of her counsel. Defendant first argues that her testimony before the Grand Jury was interrupted by the prosecutor thereby denying her the opportunity to testify in the manner she desired. (Citing People v Dunbar, 100 Misc 2d 389.)
A review of the minutes of the defendant’s testimony before the Grand Jury discloses that, upon completion of a preliminary inquiry by the prosecutor regarding the significance of her executing a waiver of immunity, the defendant was sworn, asked her name and address and was then advised of the nature of the Grand Jury’s investigation. She was then permitted to testify in a narrative form without any questioning of her by the prosecutor. Her *539 direct testimony encompassed approximately 22 transcribed pages. During her direct testimony, the defendant was interrupted twice by the prosecutor. The first time she was cautioned by him to confine her statement to the subject of the Grand Jury’s inquiry and not to ask questions of the Grand Jury. On the second occasion she was warned to refrain from instructing the Grand Jury regarding the meaning of the element of intent for the crime of murder in the second degree. On both occasions, she was then permitted to resume her narrative.
When the prosecutor interrupted the remarks of the defendant on two occasions with cautionary instructions, he did not thwart or impede her testimony before the Grand Jury. She was afforded ample opportunity to give relevant evidence about the events being considered by the Grand Jury and was not pressured by the prosecutor to curtail or confine her testimony. She was permitted wide latitude to bring not only her version of the matter under investigation to the attention of the Grand Jury, but to express her emotions and beliefs regarding the District Attorney’s motive in prosecuting her. A practical application of the rights granted a defendant by CPL 190.50 (subd 5) does not mean, however, that the testimony of a defendant may never be interrupted by the prosecutor. Under the circumstances, the prosecutor, as the legal advisor to the Grand Jury (CPL 190.25, subd 6), was indeed obligated to interject. The conduct of the District Attorney in interrupting the defendant’s narrative testimony on two occasions falls far short of the egregious conduct uniformly condemned by the case law discussing the right of a defendant to freely testify before a Grand Jury. (Cf. People v Durante, 97 AD2d 851; People v Green, 80 AD2d 650; People v Dunbar, supra.)
Accordingly, for the foregoing reasons, the request to dismiss the indictment upon this ground is denied.
IMPEACHMENT OF THE DEFENDANT BY THE PROSECUTOR
The defendant asserts that dismissal is also justified because the Assistant District Attorney failed to instruct the Grand Jury after the impeachment of the defendant by reference to alleged prior “bad acts” committed by the defendant.
*540 In an obvious attempt to impeach the defendant’s credibility before the Grand Jury the following examination of her was conducted by the prosecutor:
“(Q) How many times did you speak with Raymond O’Hare at the Suffolk County jail prior to your testimony on July 11, 1983?
“(A) Numerous times.
“(Q) Over ten?
“(A) Many more.
“(Q) Over fifty?
“(A) From — yes. From probably the early part of May I’d gone every day to see him.
“(Q) You discussed your testimony?
“(A) My testimony with Raymond?
“(Q) Yes.
“(A) No.”
Shortly thereafter, she was asked about discussions concerning her testimony at trial regarding the death of her daughter.
“(Q) Did you discuss that with Raymond O’Hare?
“(A) Briefly. Didn’t go into great detail with him.
“(Q) On July 11, 1983 —
“(A) May I say something? I had not seen Raymond O’Hare from the latter part of June just prior to the trial. I didn’t see him from June on.
“(Q) Is that when you found out the District Attorney’s office knew you were visiting him?
“(A) That’s when they told me I could not go there.
“(Q) Is that when you attempted to smuggle contraband
“(A) Instant coffee and a garter.
“(Q) How many times did you visit Raymond O’Hare prior to the trial?
“(A) Many, many times. I couldn’t count. If I had a calculator — maybe I’d just say from May til the end of June, it was practically every day.
“(Q) How many times did you identify yourself as Penelope Loizides?
*541 “(A) I never did.
“(Q) Who did you identify yourself as?
“(A) Sharon Murphy.
“(Q) Why did you do that?
“(A) Publicity. I had had enough of it. And my daughter.
“(Q) How did you arrive at Sharon Murphy?
“(A) It’s my girlfriend.”
In People v Sandoval (34 NY2d 371) the Court of Appeals held that a defendant was entitled to a pretrial ruling as to the permissible scope of his cross-examination by the prosecutor concerning prior convictions or the prior commission of specific criminal, vicious and immoral acts to enable him to decide whether to testify at trial in his own defense. Thus, that court has made no distinction, with respect to impeachment, between the use of prior convictions, or specific criminal vicious or immoral acts.
In People v Adams (81 Misc 2d 528, 530) Justice George F. Roberts, discussing the impeachment of a defendant who testifies before a Grand Jury through use of prior convictions, wrote:
“A Grand Jury performs the limited function of determining whether the People have in their possession sufficient evidence to present a prima facie case * * * In making that determination, the Grand Jury is expressly made subject to the rules of evidence contained in article 60 (CPL 190.30, subd 1), including those regarding proof of prior convictions (CPL 60.40). The Grand Jury, as a body of lay persons, obviously requires instruction as to the law applicable to a particular case, including the law of evidence. The legal advisors of the Grand Jury are the court which impaneled it and the District Attorney (CPL 190.25, subd 6). In recognition of the fact that a grand jury proceeding is the only criminal proceeding not presided over by a court or Judge, CPL 190.30 (subds 3, 4)* provides as follows:
“‘3. Wherever it is provided in Article sixty that the court in a criminal proceeding must rule * * * upon the admissibility of evidence, such ruling may, in an equiva *542 lent situation in a grand jury proceeding, be made by the District Attorney.
“ ‘4. Wherever it is provided in Article sixty that a court presiding at a jury trial must instruct the jury with respect to the significance, legal effect or evaluation of evidence, the district attorney, in an equivalent situation in a grand jury proceeding, may so instruct the jury.’
“In the instant case it is clear, therefore, that the statute envisions the District Attorney’s making the ruling on the admissibility of prior convictions to impeach. If he does so cross-examine a defendant, the duty to instruct the Grand Jury as to the limited purpose for which the evidence is admitted is likewise placed on the District Attorney. Any such instructions given must be recorded in the minutes (CPL 190.25, subd 6). Should the District Attorney engage in cross-examination or give erroneous instructions which may result in prejudice to the defendant, the resulting indictment will be subject to dismissal pursuant to CPL 210.20 (subd 1, par [c]) on the ground that the integrity of the grand jury proceeding was impaired (CPL 210.35, subd * * * ) ”
Although the discussion in Adams (supra) centered upon impeachment of a defendant by use of prior convictions, its sound reasoning and logical analysis is no less applicable to instances of impeachment of a defendant by inquiry into prior acts of misconduct which tend to discredit the defendant’s character and to vividly demonstrate him or her to be unworthy of belief. (People v Hunter, 88 AD2d 321, 322.) Such questioning must be asked in good faith and have a reasonable basis in fact. (People v Alamo, 23 NY2d 630, cert den 396 US 879; People v Kass, 25 NY2d 123.) In this case, it is reasonable for the court to infer, in the absence of limiting instructions, that the Grand Jury believed, as a result of the prosecutor’s questions, that the defendant may have been guilty of certain prior criminal acts, i.e., promoting prison contraband (Penal Law, § 205.20) or criminal impersonation (Penal Law, § 190.25), or at the very least, of specific acts of misconduct which may not have risen to the level of violations of the Penal Law.
While the giving of such instruction is not mandated by the statute, which is clearly permissive in nature, the *543 failure to do so under the circumstances of this case impaired the integrity of the Grand Jury. The testimony presented to the Grand Jury certainly demonstrates that the proceeding before that body focused upon the credibility of the defendant and her relationship to Raymond O’Hare. The fundamental element of the crime of perjury requires that a person “swear falsely,” that is, the intentional making of a false statement which one does not believe to be true while giving testimony. (Penal Law, § 210.00, subd 5.) Whether a person is otherwise credible may be weighed heavily by a deliberating Grand Jury in determining whether such person has sworn falsely. Accordingly, it is imperative that such Grand Jury understand the purpose for which the impeachment evidence has been introduced.
The thrust of the defendant’s version is that her testimony at the trial of her fiancé was not intentionally false. Referring to her trial testimony, the defendant stated before the Grand Jury:
“Again, by that time this was already July. It’s still at a point I wasn’t sure, ‘did I answer yes’ to Detective Ryan and Steven Wilutis in his office, or maybe I did say, ‘yes,’ or maybe this was in the grand jury room? Well, maybe he did say yes.
“It still doesn’t seem to be a very important point at all. Whether he said it or implied it. What is the difference between nodding yes — (indicating) — and saying yes. The answer is still the same.”
The Assistant District Attorney who presented this case to the Grand Jury delved into the subject of the defendant’s alleged misconduct while visiting her fiancé in jail for the obvious purpose of discrediting her character and to demonstrate that her version of the events giving rise to her alleged false testimony at her fiancé’s trial was unworthy of belief. On balance, although perhaps probative on the issue of her credibility as a witness, without a proper instruction on the law, it may have severely prejudiced this Grand Jury against the defendant.
Accordingly, under these circumstances, having chosen to cross-examine the defendant before the Grand Jury by reference to specific prior misconduct, it was imperative *544 that the prosecutor instruct that body that they were to consider her prior misconduct solely as a measure of testing the defendant’s credibility and not as affirmative proof that she possessed a propensity or disposition to commit the crime being considered or any other crime. In the absence of such limiting instruction, the evidence offered relating to defendant’s misconduct while visiting her fiancé in jail constituted undue prejudice to the defendant to such a degree that the integrity of the Grand Jury proceeding was impaired, thus warranting the dismissal of the indictment. (CPL 210.35, subd 5; cf. People v Gleichmann, 89 Misc 2d 648, 651; People v Hargrove, 80 Misc 2d 317, 326-328.)
The court has also considered the other arguments advanced by the defendant and concludes that they are not supported by a review of the transcript of the Grand Jury proceeding.
In view of the foregoing, defendant’s motion to dismiss the indictment as defective (CPL 210.35, subd 5) is granted and the indictment is dismissed with leave granted to the People to resubmit the charges to another Grand Jury if the People deem advisable.
The defendant is deemed to be held for further Grand Jury action and is released in her own recognizance pending resubmission of the case to the Grand Jury and that body’s disposition thereof. (CPL 210.45, subd 9).

 CPL 190.30 (subds 3, 4) were amended by section 2 of chapter 307 of the Laws of 1975, effective June 24, 1975, which added new subdivisions 3 and 4, and renumbered former subdivisions 3 and 4 as 5 and 6.