OPINION OF THE COURT
Kerry R. Trainor, J.
Mr. T. has filed a petition asking this court to review his objections to a finding of willful violation of an existing order of child support that was made by Hearing Examiner Elaine Cros *327 son. Actually this is the third willful violation proceeding against Mr. T.
Although there are certain alleged procedural defects, the thrust of Mr. T.’s objection is that since the judgment of divorce dated August 1994, there has been a substantial change in his financial circumstances. He asserts that his failure to pay child support is not a willful violation. He is trying his best to do all he can for his children in his present economic circumstances, but he cannot comply. In addition to prior willful violation proceedings, Mr. T. asserted similar claims in an unsuccessful downward modification petition that was denied in 1996.
In this willful violation proceeding, Mr. T. alleges that the Hearing Examiner did not give adequate consideration to his proof of reduced income and, therefore, made an incorrect finding of willful default. The problem that the Hearing Examiner had to consider and that this court must review, is whether or not there was credible evidence that Mr. T.’s income has, in fact, decreased and whether or not Mr. T. has truly been trying to support his children.
The evidence before the Hearing Examiner shows that Mr. T. has a college education and years of experience in the securities industry in New York City.
Since the divorce Mr. T. has left his employment in New York City. He still maintains a contractual relationship which authorizes him to sell securities on behalf of a licensed security firm on Long Island. When he entered into this contract in 1995 he was given a signing bonus, but since then this commission-based relationship has not been fruitful. From January through July of 1997 he claimed to have profited only $1,109.63 in commissions.
Although he maintains a car to travel about to attempt to make securities sales, he has found that he is able to be more successful using his truck in his other employment. Mr. T.’s testimony is that rather than profiting from his education and experience in the securities industry, his primary source of income has evolved from his interest in boats. He relies on his work as a laborer in a local boat yard. Although it does not approach what he was making in the city, it is the best he can do.
Both Mr. T. and a corporate officer of the boat yard testified that he is earning approximately $300 a week there. Unfortunately, neither one of them were able to verify this. They both also agreed that they don’t maintain any records of the exact amount since Mr. T. is paid in cash. There are no canceled *328 checks to review, no accounting records; Mr. T. is paid in cash “off the books”. A question that requires careful consideration is how much weight should be given to this type of evidence as a defense against a claim of willful violation of a support order?
Mr. T. proclaims his “off the books” employment as a cornerstone of his defense. In order to accept this type of defense, the Hearing Examiner and this court in the objection review process would have to completely turn around the prior judicial view of this type of activity.
In People v Charkow (142 AD2d 734 [1988]) the defendant in a criminal case claimed that his conviction should be overturned because the jury was not shielded from his “off the books” business practices. He claimed that the trial court should have barred the District Attorney from asking him about this. The Appellate Division, Second Department, could have denied his appeal on this issue on technical grounds, but elected to write directly on this point. The Court held: “we find that the cross-examination of the defendant regarding his failure to pay taxes and his practice of paying employees ‘off the books’ was appropriate and relevant for impeachment purposes since this information demonstrated the defendant’s willingness to place his interest ahead of those of society (see, People v Duffy, 36 NY2d 258, mot to amend remittitur granted 36 NY2d 857, cert denied 423 US 861).” (Supra, at 735.)
This result reasserts basic principles set forth by the Court of Appeals in People v Sandoval (34 NY2d 371, 377 [1974]): “A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity.”
The testimony of Mr. T. and his employer constitute admissions of wrongdoing. It is inappropriate for this court to permit such illegality to be accepted as a defense to a claim for child support. This admitted conduct of “working off the books” can only be interpreted as a loud and clear statement by the petitioner that he will not deal honestly with his financial obligations to society or his children.
The evidence showed that virtually every day Mr. T. has a choice. He can get in his car, join with other securities salespersons in assisting clients in purchasing various investments; or he can get in his truck and work “off the books” in a boat yard. The choice he has made is clear. Rather than having to report his income from various purchases by clients, perhaps even including triple tax free bonds, he has adopted a triple tax free lifestyle.
*329 In this situation, there is no fair middle ground. The testimony concerning the amount received as “off the books” income must be either embraced or questioned by the court. Evaluating this without the skepticism that traditionally accompanies illegal activity would result in judicial endorsement of a less than fair support proceeding. Fairness must be afforded not only to the respondent, but to the petitioner for child support and the children themselves. Simply accepting claimed figures of “off the books” income as reliable is an invitation to unjust results in a murky and faulted fact-finding process. In this State the amount of child support is determined by a formula that dictates a percentage of income as an outside limit on a parent’s obligation. The analysis is relatively simple. The dishonest, selfish parent has only to look for a support figure acceptable to themselves and irrefutably testify to the matching figure as a “off the books” income. This has to be discouraged.
This court cannot permit Mr. T.’s unwillingness to maintain records of income and unwillingness to pay Federal income tax, State income tax, Social Security tax and Medicaid tax to be utilized as a defense to his obligation to pay child support. The Hearing Examiner was correct to move beyond Mr. T.’s unverified claims of reduced income and to move on to a consideration of his lifestyle as reflective of his ability to pay child support.
At the time of the divorce Mr. and Mrs. T. owned a home, a number of motor vehicles and enjoyed their sailboat. Today, Mr. T. is a homeowner, instead of his wife his parents are now his partners. He owns a car and a truck, and still has a sailboat. He asserts that the sailboat is now mortgaged and there is a loan on the car. He claims that he has filed a petition in Federal court seeking bankruptcy protection from the child support payments. It is interesting and highly probative that he is not seeking bankruptcy protection from the car loan, but in fact, continues to make the payments. This is probative because it again demonstrates the correctness of the Hearing Examiner’s findings. In essence Mr. T. places protection of his assets as a priority above his obligations to his children.
In summary, the evidence shows that today Mr. T.’s lifestyle is virtually identical to what it was prior to the divorce. If he could just be protected from child support payments, he would be able to sustain everything else. The Hearing Examiner correctly rejected his position. He must recognize that in order to demonstrate to the court that he has a reduced income he must *330 have proper records of “on the books” employment. To demonstrate to the court that he’s doing all that he can to support his children, he must be prepared to show that his economic obligation to them is the priority. Certainly, by making payments on his car and boat loans, and forsaking his children, he has failed to demonstrate an inability to pay the current order of support and is unwilling to do so. The fact that the petition in bankruptcy is not seeking protection from creditors related to one of his two cars or his sailboat, so that he could support his children, serves to support the finding of willful default.
Accordingly, this court finds that the Hearing Examiner properly imputed income to petitioner. There was no abuse of discretion on the part of the Hearing Examiner, and after review of the record, no error on the part of the Hearing Examiner can be found. The record reflects that the Hearing Examiner conducted a full and fair hearing on the support violation petition filed by the respondent and that the petitioner William T.’s contentions were properly considered and disregarded. Under the circumstances, there is no cause or reason to disturb the Hearing Examiner’s findings. The objections are accordingly denied.
The finding of willfulness with respect to petitioner William S. T.’s failure to pay support is confirmed.