*948 OPINION OF THE COURT
Daniel K. Lalor, J.
Defendant is charged with promoting prison contraband in the first degree in violation of Penal Law § 205.25 (2), a class D felony, and unlawful possession of marihuana in violation of Penal Law § 221.05, a violation. Defendant submits an omnibus motion addressed to the indictment.
Preindictment Delay
The notice of motion states that defendant seeks dismissal on the ground that defendant’s due process rights have been denied because of preindictment delay. Inspection of the indictment and grand jury minutes shows that the alleged offense occurred on June 19, 2005 and the case was presented to the grand jury on October 19, 2005, a delay of exactly four months. The supporting affidavits do not address this issue, and the People do not refer to it in their papers submitted in opposition to the motion. The delay is not so inordinate as to cause the court to subject it to scrutiny on its own (see People v Andrade, 301 AD2d 797 [3d Dept 2003]). Relief on this ground is accordingly denied.
Statements
Defendant moves to suppress all oral and written statements allegedly given by him to law enforcement personnel which bear upon this indictment. The People in response to the motion indicate they have given notice of their intention to use such statements by serving a notice pursuant to CPL 710.30 of a statement given on June 19, 2005 at 10:00 p.m. to Correction Officer Palmer at Greene Correctional Facility. The court will conduct a hearing to determine the admissibility of statements embraced by the People’s notice.

Sandoval

The motion for a hearing pursuant to People v Sandoval (34 NY2d 371 [1974]) is denied without prejudice to renewal prior to trial.
Inspection/Dismissal
The motion for in camera inspection of the grand jury minutes is granted; the People have provided minutes to the court for review. Release of the minutes to defense counsel is denied. Defendant moves to dismiss the indictment for lack of legally suf *949 ficient evidence. In particular, defendant moves to dismiss the class D felony count charging promoting prison contraband in the first degree, on the ground that the particular contraband allegedly possessed by defendant, 0.13 grams of marihuana, under the circumstances in which it was allegedly possessed, as a matter of law did not constitute “dangerous” contraband within the meaning of the statute defining the offense of promoting prison contraband in the first degree (Penal Law § 205.25).
“Contraband,” for purposes of that statute, means “any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order” (Penal Law § 205.00 [3]). “Dangerous contraband,” for purposes of this charge, means “contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein” (Penal Law § 205.00 [4]). The difference between promoting prison contraband in the first degree and promoting prison contraband in the second degree, a class A misdemeanor, is whether the contraband can be properly characterized as “dangerous” (see Penal Law §§ 205.20, 205.25).
“[T]he danger posed to a facility from certain types of contraband is apparent from the nature of the item” (People v Brown, 2 AD3d 1216, 1217 [2003], lv denied 3 NY3d 637 [2004]; see e.g. People v Anderson, 299 AD2d 578 [2002], lv denied 99 NY2d 580 [2003] [razor blade type weapon]; People v Mendoza, 244 AD2d 815 [1997], lv denied 91 NY2d 943 [1998] [shank]; People v Hammond, 132 AD2d 849 [1987], lv denied 70 NY2d 875 [1987] [sharpened metal melted into a pen]). “Such a conclusion cannot, however, be drawn merely from the presence of a very small amount of marihuana.” (People v Brown, 2 AD3d at 1218.)
While “there is precedent indicating that a controlled substance can constitute dangerous contraband in some circumstances” (People v Brown, 2 AD3d at 1217; see People v McCrae, 297 AD2d 878 [2002]; People v Rivera, 221 AD2d 380 [1995], lv denied 87 NY2d 977 [1996]; People v Watson, 162 AD2d 1015 [1990], appeal dismissed 77 NY2d 857 [1991]), the law requires that an indictment elevating the noncriminal offense of unlawful possession of marihuana, alleged in count two, to the class D felony of promoting prison contraband in the first degree, alleged in count one, be supported by “competent and specific proof,” when viewed in the light most favorable to the prosecu *950 tion, in this case that defendant’s possession of marihuana endangered safety or security at the Greene Correctional Facility.
In this regard, testimony as to “broad penological concerns” has been held insufficient as a matter of law to support the latter charge (People v Brown, supra at 1217). Rather, “[s]pecifie proof is needed regarding how the particular marihuana that was possessed by each defendant endangered the safety of the facility,” for “[t]he distinction between the two degrees of promoting prison contraband would be nonexistent if every item of contraband could be considered dangerous contraband by merely speculating as to how such an item could endanger the safety of a facility” (People v Stanley, 19 AD3d 1152, 1153 [4th Dept 2005]; see also, People v Bullock, 19 AD3d 1154 [4th Dept 2005]; People v Reilly, 19 AD3d 1154 [4th Dept 2005]; People v Hennigan, 19 AD3d 1154 [4th Dept 2005]; People v Price, 19 AD3d 1153 [4th Dept 2005]).
The views expressed in particular by the Appellate Division, Third Department, on this issue have recently undergone dramatic modification. In 2002, that Court summarily rejected the same argument today raised by defendant, writing simply, “More than one appellate court has recognized that the use of illegal drugs by inmates in correctional facilities ‘can result in disruptive and dangerous behavior among the inmate population,’ thus providing a basis for the charge of promoting prison contraband in the first degree” (People v McCrae, 297 AD2d 878, 878 [3d Dept 2002] [citing as authority People v Watson (162 AD2d 1015, 1015 [1990], appeal dismissed 77 NY2d 857 [1991]) and People v Rivera (221 AD2d 380 [1995], lv denied 87 NY2d 977 [1996]), both of which cases involved not marihuana, but heroin]). Yet, a year later, the same Court in deciding People v Brown (supra) stated, “Such a conclusion cannot, however, be drawn merely from the presence of a very small amount of marihuana and general concerns about the marihuana that are not addressed to the specific facts of the particular situation” (People v Brown, supra at 1218). And, the Third Department’s reasoning in Brown was adopted by the Appellate Division, Fourth Department, last year in People v Stanley (19 AD3d 1152, 1153 [4th Dept 2005]), where that Court observed,
“[T]he distinction between the two degrees of promoting prison contraband would be nonexistent if every item of contraband could be considered dangerous contraband by merely speculating as to *951 how such an item could endanger the safety of a facility. Specific proof is needed regarding how the particular marihuana that was possessed by each defendant endangered the safety of the facility” (People v Stanley, supra at 1153).
This court, alert to evolving appellate standards, must be guided by these recent authorities.
In this case, the People produced as witness before the grand jury Joseph Belarge, Jr., a captain for 11 years with the New York State Department of Correctional Services (DOCS), with 24V2 years’ overall work experience at DOCS, and currently at the third level in the chain of command at Greene Correctional Facility. Belarge testified that Greene Correctional Facility is a detention facility housing adult felons, and that under regulations of the department, marihuana was considered “contraband” in all correctional facilities.
Asked to describe any “special dangers” posed by the presence of marihuana, Belarge testified that if an inmate had “one marihuana cigarette,” another inmate might “beat him up to try to take it away from him.” A greater quantity of marihuana would attract greater interest, because marihuana in prison is “very valuable,” both in itself and as a medium of exchange or barter, in that inmates are not allowed to possess money in prison. “Everything from cigarettes, soap, marihuana — when they do get cash illegally it becomes very valuable. The actual trade, the drug trade becomes very profitable.” With increased scale of quantities,
“the gang members get involved and the gangs like to control the drugs so if an individual or a group or a gang is selling drugs here and another group wants to take that over they are going to do what they can to take those people out of position so that they can take over that trade. Anything from scaring the guy, making him go in protective custody to actual fights where weapons are used and injuries occur. So it is a lot of cause of a lot of the violence that we have in prison.”
Asked to describe potential danger relating to an individual who has marihuana subject to a pat-frisk, Belarge responded:
“If that inmate, knowing that he faces serious charges doesn’t want to get caught, he may assault that staff member so he can get away so he can ditch the marihuana and not get caught for it. He’d rather face the charges for assaulting that officer and take *952 his gamble that maybe he won’t get prosecuted.”
And, asked about the general environment within a prison and altered states of consciousness caused by the consumption of drugs, Belarge testified:
“In prison if you’re sitting with a group like this everybody is looking to their left and their right to figure out, you know, do I have a problem with that person. When they get high they become bold, sometimes they will do things unreasonable and just like they’re watching, the other person is watching too. They could end up causing people to do rather foolish things that cause other incidents to occur.”
Asked to relate specific experiences relating to dangers resulting from inmates possessing drugs and marihuana, Belarge described an incident at Coxsackie Correctional Facility where members of a particular gang which “wanted to run all the drugs, they wanted to take charge of everything,” assaulted other inmates in the yard that they considered enemies.
With regard to this case, Belarge testified defendant might have been part of a smuggling operation, or “it’s also possible that he was carrying it for someone else or he was just carrying his own supply around, I don’t know.”
Analyzing this testimony, the “illicit commerce” argument is undercut by Belarge’s own testimony that an illicit economy can be built on otherwise innocuous contraband, such as cigarettes or soap. To deem any amount of such contraband “dangerous” without regard to an assessment of its quantity or “value” in the underground economy therefore poses the risk identified in Stanley, of eliminating the distinction drawn by the Legislature between the offenses of promoting prison contraband in the first and second degrees. Notably, in People v Brown (supra at 1216), it was the discovery of “four small marihuana cigarettes, known in street parlance as ‘pin joints,’ ” obtained from an inmate with whom defendant had allegedly had illicit commerce, that led to the impoundment of the marihuana possessed by defendant, consisting of “less than one gram of marihuana.” That level of “commerce” was not found to support a finding of dangerousness in Brown. And, with regard to this case, Belarge testified he did not know whether defendant, like Brown, might have been part of a smuggling operation, or “was just carrying his own supply around.”
The “avoidance of prosecution” concern expressed by Belarge would be credible, if the penalty for possession of the specific *953 contraband was markedly greater than the penalty for assaulting a correction officer, a class D violent felony. But, promoting prison contraband in the first degree is itself only a class D nonviolent felony and, except for the classification of marihuana as “dangerous contraband,” possession of the amount charged here would support only the class A misdemeanor of promoting prison contraband in the second degree, and the noncriminal violation of unlawful possession of marihuana. Belarge’s testimony also supposes that the contraband would not be discovered and seized in any event following an assault on a correction officer, an event which the court in its experience views as unlikely.
The “potential for general intoxication” concern fades in the face of the facts of this case, which involve an amount of marihuana 0.13 grams in weight, characterized by defense counsel as roughly the equivalent of a paper clip. There was no testimony before the grand jury as to what, if any, effect that consumption of such a minuscule amount of marihuana could produce upon an individual’s mental state.
Finally, Belarge’s anecdote regarding an incident at a different facility involving gang members attempting to assume control of what was evidently there a large illicit trade in controlled substances has little relevance to the circumstances here, other than to restate those “broad penological concerns” found to be insufficient to support a specific finding of dangerousness.
Upon review of the grand jury minutes, the court is of the opinion that there was legally insufficient evidence, viewed in the light most favorable to the People, to support a finding that defendant possessed dangerous contraband. Accordingly, count one of the indictment is hereby reduced to charge promoting prison contraband in the second degree, contrary to Penal Law § 205.20 (2).
All aspects of defendant’s motion not granted herein are hereby denied.