OPINION OF THE COURT
Stuart Namm, J.
Defendant, John McAleavey, is charged with the alleged commission of two counts of operating a motor vehicle while under the influence of alcohol, as a felony.
Hearings were conducted simultaneously by the court to determine the voluntariness of certain statements attributed to the defendant by the arresting officer (CPL 60.45), and to *988 also determine the defendant’s request to dismiss the indictment upon the ground that the defendant’s arrest was made without probable cause to either stop the defendant’s vehicle and/or arrest him for violation of Vehicle and Traffic Law § 1192 (2) and (3).
A separate Sandoval hearing was likewise conducted which presented this court with a novel issue of great import to both sides, vis-á-vis the conduct of the trial.
The evidence adduced before the court during the Huntley and Wade hearings consisted solely of the testimony of Suffolk County Police Officer Donald Meyers, the arresting officer, since the defendant chose not to testify or to call any witnesses on his behalf. The police officer’s testimony relating to the events of September 4, 1985 was forthright and consistent, and was entirely credible.
FINDINGS OF FACT
On September 4, 1985 at approximately 7:00 p.m., Police Officer Meyers was driving southbound in a marked police sector car along the William Floyd Parkway in Shirley, New York. As he approached the intersection of the parkway with Parkview Drive, intending to make a left turn onto Parkview Drive, Meyers observed a 1963 Dodge automobile traveling approximately 40 m.p.h. northbound on the William Floyd Parkway. At the time the road conditions were dry and the weather was clear and sunny, and it was still daylight.
After coming to a complete stop with his police vehicle, Meyers observed the 1963 Dodge automobile make a sudden and erratic turn onto the left side of Parkview Drive, a two-way street. Police Officer Meyers then followed the car which continued to travel on the left side of the roadway while slowing to a speed of 10 m.p.h. There were no other vehicles in the area, nor were any cars parked along Parkview Drive. Meyers then displayed the overhead police vehicle lights and the operator of the 1963 Dodge moved to the right lane and came to a stop.
Meyers exited his vehicle and approached the driver’s side of the Dodge. He observed only one occupant in the car and requested this individual’s license, registration and insurance card. The defendant provided the officer with his name; whereupon, Meyers asked the defendant where he was going and where he had been. The defendant responded and said that he was going home and that he had just dropped off his son. As *989 Police Officer Meyers leaned closer to the defendant he smelled an odor of alcohol emanating from the defendant’s breath. He also noticed that the defendant’s eyes were glassy and his speech was slurred. He then asked the defendant to exit the vehicle, which he did, and requested him to perform "sobriety” tests at the rear of his vehicle. Police Officer Meyers also asked to smell the defendant’s breath, which he did, noticing a strong alcoholic odor. He then asked the defendant to recite the complete alphabet, which the defendant was unable to do, and requested him to balance, unaided, on one foot, which the defendant also could not do. The defendant continued to stagger, weaved back and forth and leaned against the vehicle to support himself. Meyers observed that the defendant’s face was "flush” and reddish in color.
Prior to this incident, Police Officer Meyers had made nearly 30 arrests for "DWI” offenses, and after observing the defendant in the performance of the tasks requested, concluded that the defendant was intoxicated. He then placed the defendant under arrest, sat him in the police vehicle, and asked him if he wished to take a breathalyzer test.
At the precinct, Police Officer Meyers read the defendant Miranda warnings which were printed upon an "Alcohol Influence Report”. Defendant’s response was that he did not know what he, meaning the officer, was talking about; that he did not understand anything, and volunteered: "who am I going to call?”
CONCLUSIONS OF LAW
The law clearly recognizes the right of the police acting on less than probable cause to stop and confront citizens on public highways for investigative activity, which gives rise to an "articulable suspicion” that criminal activity has occurred. (Terry v Ohio, 392 US 1, 31.)
"In assessing the reasonableness of police conduct in citizen street encounters, the Court of Appeals has stated that '[T]he proper analysis in cases of this nature is to examine the predicate for the police action and then determine whether * * * that predicate justified the extent of the official intrusion on the individual. Thus, the predicate established defines the scope of permissible police conduct.’ (People v Stewart, 41 NY2d, at p 66.)” (People v Bruce, 78 AD2d 169, 172.)
The triggering event in the instant case, namely, the erratic and sudden turn by the operator of an automobile, and the *990 continued travel on the wrong side of the roadway, clearly authorized Police Officer Meyers to stop the vehicle he had observed and to make a reasonable inquiry of the vehicle’s operator. Such action does not constitute an actual or constructive constraint. (People v Carrasquillo, 54 NY2d 248.) Indeed, under the circumstances, it was the duty of Police Officer Meyers to make a prompt investigation which would thereby determine what, if any, action by him was needed. Unfortunately for the defendant, the action herein required was an arrest for driving while intoxicated. The preliminary observations by Police Officer Meyers, an officer experienced in DWI arrests, warranted further investigation on his part in the form of conducting several field sobriety tests upon the defendant. Having lawfully detained the defendant for a brief period, the police request to the defendant to exit his vehicle was constitutionally permissible. (Pennsylvania v Mimms, 434 US 106.) Moreover, there was a rational basis for this request: Police Officer Meyers wanted to be certain that the defendant’s operation of his vehicle, as observed by him, was the result of an intoxicated condition. Accordingly, the request that the defendant perform several simple physical and mental tasks in an effort to determine his dexterous skills, when balanced against the interests of society, certainly does not rise to a "serious intrusion upon the sanctity of the person” (Terry v Ohio, supra, p 17). As the United States Supreme Court wrote in Pennsylvania v Mimms (supra, p 111): "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer’s safety.” This principle applies with equal force to the concerns for the safety of society at large.
Accordingly, the court concludes that the arrest of the defendant for the offense charged in the indictment was lawful and predicated upon probable cause.
The court further concludes that the oral statements made by the defendant to Police Officer Meyers in response to his questions as to where he had been and where he was going shall be admissible in evidence at trial.
The questions posed by the officer were reasonable under the circumstances and were not designed to elicit an incriminating response equivalent to a surreptitious custodial interrogation. The defendant was not in custody when the statements were made.
However, the oral statements attributed to the defendant *991 made in response to the Miranda warnings read by Police Officer Meyers shall be suppressed as evidence at trial. The defendant was in custody when these statements were made. Moreover, the People have not sustained their heavy burden to demonstrate that the defendant knowingly and intelligently waived his right to counsel. (Miranda v Arizona, 384 US 436, 475.) Although a waiver of rights, namely, the intentional relinquishment of a known right or privilege (cf. Johnson v Zerbst, 304 US 458, 464) may be inferred from an analysis of the totality of the circumstances including the actions and words of a defendant (see, North Carolina v Butler, 441 US 369, 373), the evidence adduced at the hearing falls short of that needed to support the conclusion that defendant has knowingly and intelligently waived his right to remain silent and his right to the aid of counsel.
THE SANDOVAL REQUEST
The Sandoval issue before this court has raised a difficult question which seems to be of first impression, since the same appears never to have been directly confronted by a trial court in this State, i.e., whether previous convictions for operating a motor vehicle while under the influence of alcohol may be used to impeach the credibility of a defendant, when the defendant is once again being tried for the identical offense.
A review of the defendant’s prior criminal history indicates three convictions for alcohol related offenses within the past 10 years, which occurred on April 4, 1985, March 3, 1979 and July 12, 1977. The defendant seeks an order of the court prohibiting the prosecutor from cross-examining him about any of these convictions, claiming that he will be unduly prejudiced in his defense of the instant charge, since the arrests and convictions, collectively, could cause a jury to believe that he has a propensity to commit such offenses, thereby representing a threat to a fair and impartial jury trial.
As mandated by law, this court has attempted to balance the probative value of such cross-examination of the defendant by the People against the potential prejudice thereof to the defendant. It has been made abundantly clear by both sides that the credibility of the defendant and the arresting officer will be a key to the question of guilt or innocence, since the defendant will apparently claim that his son was operating *992 the vehicle, while the arresting officer has already testified that only the defendant was in the vehicle at the time in question.
In the opinion of this court, the violation of the laws prohibiting the operation of a motor vehicle upon a public highway while under the influence of alcohol clearly evinces a marked willingness on the part of the perpetrator to consider his own self-interests paramount to those of society.
The consumption of alcohol to an excessive level may or may not be controllable by the individual. However, the operation of a motor vehicle in an inebriated condition is a calculated and voluntary act, and not an act of impulsive violence which "will seldom have any logical bearing on the defendant’s credibility, veracity or honesty at the time of trial.” (People v Sandoval, 34 NY2d 371, 377.) On the contrary, driving while intoxicated is an act which bears logically and reasonably on the issue of credibility (see, People v Sandoval, supra, p 376), since it readily demonstrates a willingness to place one’s self-interest ahead of the interests of society. As the Court of Appeals observed in Sandoval (supra, p 377): "To the extent * * * that the prior commission of a particular crime * * * of specified * * * immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead * * * of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand. A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity.”
Moreover, in People v Costello (112 AD2d 478, 480), the Appellate Division, Third Department, implicitly found that a driving while impaired conviction was relevant on the issue of the defendant’s credibility, although that court was confronted with a case where the crime charged was not similar or identical to the previous conviction, and, accordingly, did not have to reach the ultimate issue before this court.
While the Court of Appeals might, at first blush, appear to exempt convictions for driving while impaired or intoxicated from its Sandoval ruling (supra, p 377), when the court speaks of "conduct occasioned by addiction or uncontrollable habit, as with alcohol or drugs” as having "lesser probative value” this court is aware of no addiction or uncontrollable habit which *993 drives one who is inebriated, whether by addiction or otherwise, to operate a motor vehicle upon a public highway in derogation of the interests of society as a whole. In any event, there was no evidence presented that the defendant suffered from an uncontrollable habit; but even if there were, it is not the consumption of alcohol which clashes with the public interest, but the operation of a motor vehicle while under the influence of alcohol which is universally condemned.
Although in 1974 the Court of Appeals did not specifically set forth this type of offense as one which was anchored in the interests of society, and one which would have a material relevance on the issue of credibility, public interest is not etched in stone and unchangeable, as it is constantly shifting with the winds of societal needs; and with respect to driving while intoxicated, the public interest has certainly changed radically in the past decade. Who, in 1986, would say that society does not have an absolute interest in keeping the public highways and the public safe from drunk drivers?
The interests of society in this regard were cogently stated in 1981 in the legislative and executive memoranda submitted by the New York State Legislature and Governor Carey, respectively, when the penalties for violators and repeat offenders of the driving while intoxicated laws were increased substantially. The legislative preamble to Laws of 1981 (ch 910, § 1) reads, in part, as follows: "New York state has long had laws intended to prevent individuals who have consumed excessive amounts of alcoholic beverages from driving. These laws have been enacted because intoxicated drivers are far more likely to become involved in accidents than those who have not been drinking. In fact, alcohol is a factor in more than half of all vehicular fatalities, despite the fact that the state has laws against driving while intoxicated. Because of the persistence of this problem, it is essential that the state take further steps to protect those who make use of roads from the needless deaths, injuries, and property damage resulting from drunk driving.”
Furthermore, the principles of law adopted in Sandoval do not, as a matter of law, preclude the cross-examination of a defendant about crimes which are similar or even identical to those for which a defendant stands trial. (See, People v Bennette, 56 NY2d 142, 147; People v Torres, 110 AD2d 794, 795; see also, People v Lawson, 112 AD2d 457, 461; People v Van Skiver, 111 AD2d 1032.) In affirming a previous decision of this court, the Appellate Division, Second Department, unani *994 mously concluded: "The fact that [a] defendant may specialize in one type of criminal activity should not shield him from impeachment with prior convictions” (People v Cherry, 106 AD2d 458, lv denied 64 NY2d 888). While one who has multiple convictions arising out of alcohol related driving is not usually thought of as a specialist in that type of activity, nonetheless, he too should not be immune from impeachment simply because of the commonality of the convictions with the issue at trial. On balance, the probative value of the issue of the defendant’s credibility to the People, in this particular case, far outweighs the potential prejudice to the defendant if he should choose to testify on his own behalf, especially since a limiting instruction will be given to the jury.
Accordingly, for all of the aforesaid reasons, if the defendant should choose to testify on his own behalf, the aforementioned convictions may be used by the People upon cross-examination solely for purposes of impeachment.