■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARYL TATE, Appellant.—Judgment of the Supreme Court, New York County (Clifford Scott, J.), rendered on January 25, 1989, convicting defendant, after trial by jury, of robbery in the first, second and third degrees and sentencing him to three concurrent terms of imprisonment of 12½ to 25 years, 7½ to 15 years and 3½ to 7 years, respectively, is unanimously reversed, upon the law and facts, and the case is remanded for a new trial on all charges.

The security guard at the Duane Reade store located at 509 Fifth Avenue in New York County observed the defendant move from aisle to aisle while carrying a shopping bag with his coat draped across his arm, partially covering the bag. As the defendant attempted to exit the store, the security guard observed that several packages of Combat roach traps were stuffed into the defendant's coat sleeve. Six roach traps were removed from the sleeve and sixteen more were found in the bag. The defendant admitted at trial that he intended to steal the roach traps found in his coat sleeve, but claimed that those found in the bag had been purchased at an Odd Lot store. However, no receipt was found for those roach traps. The People's witnesses testified that the defendant then grabbed the bag, which now contained all of the roach traps, ran to the rear of the store and failed in his attempt to escape through the emergency exit. The defendant then proceeded to

the front door, where he crashed into a female bystander. He attempted to avoid apprehension by knocking down the store manager, tossing an ashtray container at the security guard and striking the store manager with a metal detector rod that he had hurled at the security guard. The defendant was ultimately subdued and subsequently arrested by the police.

Defendant testified and stated that he did not retrieve the bag or use force to flee with it. He testified that he tossed the ashtray container at the security guard in response to the security guard's unprovoked assault upon him with a nightstick. Defendant alleged that up to nine persons assaulted him. He ran about the store, fearing for his safety. He denied crashing into the female bystander, knocking down and striking the store manager and assaulting anyone with a metal detector rod.

Viewing the evidence in the light most favorable to the defendant, it was reversible error for the trial court to refuse the defendant's request to charge petit larceny as a lesser included offense because a reasonable view of the evidence would support a finding that the defendant committed petit larceny, but did not use force, a necessary element of robbery. *(See,* CPL 300.50; *People v Johnson,* 45 NY2d 546 [1978]; *People v Henderson,* 41 NY2d 233 [1976].) Moreover, under the facts herein, it was impossible for the defendant to have committed robbery in the first, second and third degrees without concomitantly committing petit larceny. *(Compare,* Penal Law §§ 155.25, 160.05, 160.10, 160.15; *see, People v Henderson, supra; People v Glover,* 57 NY2d 61 [1982].) Moreover, the People concede error here and that a new trial is required.

The defendant's contention that the evidence was insufficient to support a finding of physical injury for purposes of a conviction for robbery in the second degree (Penal Law § 160.10 [2] [a]; § 10.00 [9]) is rejected. The evidence offered to establish that a physical injury had been sustained by the female bystander consisted of her testimony, an ambulance report and hospital triage record. The woman testified that the defendant knocked her into the glass front door. Her glasses were broken. She sustained an abrasion to her face about the size of a quarter and an injury to her wrist. She was transported to Beth Israel Hospital by ambulance. She left the hospital without receiving any treatment and none was subsequently sought. The female bystander further testified that the facial abrasion was painful and that it took several weeks for the bruising to disappear. Several months passed before

she was able to write, work or move her wrist without any pain. The ambulance report noted an "obvious hematoma". The hospital triage record indicated complaints of pain in the cheek, soreness of the wrist and dizziness. This evidence, taken together provided a basis from which the jury could properly conclude that the female bystander sustained "physical injury". *(See, People v Rojas,* 61 NY2d 726 [1984]; *cf., Matter of Philip A.,* 49 NY2d 198 [1980].) Concur—Sullivan, J. P., Milonas, Rosenberger, Ross and Smith, JJ.