■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DRAKE ELLIS, Appellant.—Judgment, Supreme Court, New York County (Clifford A. Scott, J.), rendered March 5, 1990, convicting defendant, after a jury trial, of one count of robbery in the first degree and two counts of robbery in the second degree and sentencing him, as a predicate felony offender, to concurrent, indeterminate terms of from 12½ to 25 years and 7½ to 15 years imprisonment, respectively, affirmed.

There appears to be no dispute among us regarding the trial evidence, which established that, after shoplifting 25 washcloths from the towel department of Woolworth's, defendant attempted to flee and was confronted and seized by store personnel in the course of which he slashed the store manager and another employee with a paring knife which he wielded. We part company, however, on the question of the correctness of the trial court's *Sandoval* ruling, the adequacy of its supplemental instructions to the jury and the effectiveness of the representation rendered by defense counsel.

Regarding its *Sandoval* ruling, the court was informed that defendant had been arrested 53 times since 1974, was convicted 24 times of misdemeanors and three times of felonies and that the prosecutrix had no intention of cross-examining defendant about any convictions that were more than ten years old. The prosecutrix stated that she intended to ask about two stolen car convictions, a farebeating case, a possession of burglars tools conviction and some 14 petit larceny cases all of which involved shoplifting and several of which

were similar to the facts of the instant case. She also stated that she did not intend to ask defendant about a 1984 disorderly conduct conviction, but would ask him about his use of ten aliases in the past. Defense counsel asked the court to exclude questions about any of the petit larceny convictions and to permit inquiry only about the two auto theft felonies and the farebeating and burglars tools convictions.

In allowing the inquiry sought by the prosecution, the court noted that because a defendant specializes in one particular type of crime he should not be immunized from inquiry into such crimes because he was being tried for one of his specialties.

It is well settled that mere similarities between prior crimes and the crime presently charged do not alone require preclusion and the mere fact that a defendant has specialized in a particular type of crime does not insulate her or him from cross-examination about such crimes *(People v Cain,* 167 AD2d 131, 133, *lv denied* 77 NY2d 836). Under the circumstances, no abuse of the trial court's discretion in permitting inquiry into the facts of the prior crimes is indicated inasmuch as crimes involving individual dishonesty such as theft are particularly relevant to the issue of credibility. *(See, People v Sandoval,* 34 NY2d 371, 377.)* While the court's discussion of the necessary balancing of the various factors involved might have been fuller, this is not an instance where the court abdicated its responsibility to exercise its discretion or abused such discretion.

Similarly, while the court made several statements which would have been better left unsaid and some of its explanations could have been clearer during its conscientious attempts to respond to the jury's, at times confusing, questions during its two days of deliberations, nevertheless, its supplemental instructions when considered in full and in context neither misstated the applicable law nor tended, in the end, to confuse or coerce the jury.

The excerpts quoted by the dissent reflect only part of the colloquy engendered by the jury's second and third notes. There is no complaint about the court's original charge to the jury, nor is there any quarrel with the court's answers to three other notes, one earlier which asked the court to clarify robbery in the first and second degree and two later, which ended with a final request that the court reread the elements of robbery in the second degree. Fifteen minutes later, the jury returned with its verdict, convicting defendant of one count of robbery in the first degree and two counts of robbery

in the second degree, but acquitted him of two counts of assault in the second degree. We would note that, although we disapprove of the court's statement that it would not accept any partial verdict, this is not a case where such comment was in response to a statement that the jury was hopelessly deadlocked, but rather an inquiry of a conjectural nature.

While the trial court must respond meaningfully to the jury's questions, it possesses some discretion in framing its supplemental instructions, and, in gauging the sufficiency of its responses, we must consider " 'the form of the jury's question, which may have to be clarified before it can be answered, the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the defendant' " *(People v Almodovar,* 62 NY2d 126, 131-132, quoting *People v Malloy,* 55 NY2d 296, 302, *cert denied* 459 US 847). Moreover, since the trial court is in the best position to interpret the jury's request, it has discretion to fashion the appropriate response and may even respond by repeating its earlier instructions on the same subject. *(People v Steinberg,* 170 AD2d 50, 71-72, *lv granted* 78 NY2d 1081, citing *People v Malloy, supra,* at 301-304.) Applying the foregoing standards to the trial court's responses to the jury's questions, any error should be deemed, at worst, harmless in light of the undisputed trial evidence.

Finally, defendant's present complaints about the adequacy of his assigned trial counsel's representation amount, as is often the case, to nothing more than Monday morning quarterbacking and second guessing. We again note that contrary to the statement in the dissent, defense counsel specifically and in detail took exception to the specific supplemental instructions excerpted therein. This is simply not a case where cumulative errors and omissions on the part of defense counsel led to the conclusion that the defendant was deprived of the meaningful assistance of counsel. Concur—Sullivan, J. P., Milonas and Kupferman, JJ. Smith and Kassal, JJ., each dissent in a separate memorandum, all as follows:

Smith, J. (dissenting).

The People contended that the defendant committed robbery when he entered a store, took a number of washcloths, stuffed them into his clothing, and used force as he tried to escape. The People further contended that defendant injured two people with a knife during the encounter. The defendant contended that there was no robbery, that there was a larceny which was completed and that a struggle occurred when efforts were made to capture him. There should be a reversal

because of the trial court's inadequate supplemental instructions on the use of force, its erroneous supplemental charge on physical injury, and its erroneous *Sandoval* ruling *(People v Sandoval,* 34 NY2d 371 [1974]).

On September 14, 1989, defendant entered a Woolworth's department store with entrances on Cortlandt Street and Dey Street in Manhattan. A security guard at Woolworth's observed defendant stuff numerous washcloths under his clothes. As he was apparently attempting to leave the store, defendant was intercepted by staff and asked to proceed to a private room where he would be searched. Despite his movement toward the Cortlandt Street exit, defendant insisted he was not going anywhere. Defendant was restrained and taken toward the room. He broke free, pulled a knife out of his pocket, attempted to slash the security guard's face, and then cut the security guard on the arm. Defendant then ran toward the Dey Street exit. His path was blocked by the store manager and an assistant manager. Defendant pushed a six-foot display rack of sunglasses towards these men, striking the manager on the head. The manager grabbed defendant and the security guard saw defendant cut the manager on the hand with the knife. Defendant was ultimately subdued and turned over to the police. The police recovered twenty-five washcloths from defendant and received the knife from the security guard. The security guard testified that the cut did not hurt "too bad" and that he refused medical assistance although it was bleeding. The manager also sustained a bruise to his forehead which was swollen and visible for about one day. He declined medical assistance for the knife wound across his knuckles which was described as bleeding, painful, sore, and swollen. A residual scar was displayed to the jury. There was no evidence that defendant had sustained any injuries.

Defendant presented no evidence.

On appeal defendant seeks reversal of his conviction on four grounds: (1) an erroneous *Sandoval* ruling, (2) insufficient evidence to establish physical injury, (3) erroneous supplemental instructions, and (4) ineffective assistance of counsel.

The defendant was charged with two counts of robbery in the first degree in violation of Penal Law § 160.15 in that he "forcibly stole certain property * * * and in the course of the commission of the crime and of the immediate flight therefrom, he used and threatened the immediate use of a dangerous instrument, to wit, a knife." He was also charged with two counts of robbery in the second degree in violation of Penal

Law § 160.10 in that he "forcibly stole certain property * * * and in the course of the commission of the crime and of the immediate flight therefrom, caused physical injury" to a person who was not a participant in the crime. He was also charged with two counts of assault in the second degree in violation of Penal Law § 120.05 in that "with intent to cause physical injury to another person [he] caused such injury * * * by means of a dangerous instrument, to wit, a knife."

Penal Law § 160.15 (3) defines robbery in the first degree, insofar as it is applicable to this case, as follows:

"A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime * * *

"(3) Uses or threatens the immediate use of a dangerous instrument."

Penal Law § 160.10 (2) (a) defines robbery in the second degree, insofar as it is applicable to this case, as follows:

"A person is guilty of robbery in the second degree when he forcibly steals property and when * * *

"(2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime,

"(a) Causes physical injury to any person who is not a participant in the crime."

Penal Law § 120.05 (2) defines assault in the second degree, insofar as it is applicable to this case, as follows:

"A person is guilty of assault in the second degree when * * *

"(2) With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

The first reason for reversal is the court's inadequate supplemental instructions on force. Several times during its deliberations the jury requested clarification on the definitions of robbery in the first and second degrees. It is clear that part of its concern centered on when force had to be used in order to constitute robbery. It was thus focusing on the People's contention that there was a robbery because force was used in the immediate flight from the crime and the defendant's contention that the larceny was over and the force was used to prevent capture.

The following colloquy indicates that (1) the jurors' question

was inadequately responded to as to the use of force in that the court told the jury not to worry about force and gave a confusing charge, (2) a contradictory charge as to the consideration of the assault charges was given since the court told the jury both to consider them or not to consider them as they wished, and (3) the court erroneously responded to the jury's question about the seriousness of the physical injury by stating that there was a difference between physical injury and serious physical injury.

"THE CLERK: And Mr. McDaniel, the foreman, would you be kind enough, sir, to read Exhibit 5, that is the second note.

"THE FOREMAN: Okay.

" 'To Judge Clifford Scott from the jurors:

" 'Does the use of force in flight from a theft constitute forcible theft or does the force need to be used in the actual theft? If so, both forceful theft and force during flight requires to justify the charge of Robbery in the 1st Degree? *[sic]*

" 'Are we to consider the seriousness of the injury in determining the charge of Robbery in the 2nd Degree and assault, or only whether an injury was incurred?

" 'If so, please clarify or restate what constitutes a serious injury.

" 'If we find the defendant guilty of Robbery in the 1st and 2nd Degree do we need to vote on the surcharges *[sic]* or are they implied?'

"THE COURT: All right.

"THE CLERK: Thank you, sir, please be seated.

"THE COURT: All right. The last one I will answer this way: *No, if you find him guilty of Robbery in the 1st Degree you also are to consider the assault charges, do you understand that?*

"THE FOREMAN: Yes.

"THE COURT: All right. *With reference to the forcible theft don't get caught up with these words. They do not mean anything that way, you know.* This is what I said: A person is guilty of Robbery in the 1st Degree when he forcibly steals property and when, in the course of the commission of the crime or the immediate flight therefrom, he or another participant in the crime uses or threatens immediate use of a dangerous instrument. Robbery is defined in the Penal Law as forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, that is stealing, he uses or threatens the immediate use of physical force upon another person for the purpose of one,

preventing or overcoming resistance to the taking of the property, or the retention thereof immediately after the taking of it. I will explain that again if you want. Or two, compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny. *That means to do nothing, engage in any conduct which would aid in the commission of the larceny, not fight back.* So first, using force for what purpose, not to steal, you know, to prevent or overcome resistance to the taking of the property. If someone will prevent you from taking the property uses force, or threatens to use force on this person to overcome the resistance of the person taking of the property, or the retention, that is keeping of the property, thereof immediately after the taking or number two, compelling the owner of the property or another person to deliver up the property, give it up or to engage in conduct which aids in the commission of the larceny. *[sic]* *That means do nothing.* Do you follow what I am saying? *The force means the threat, as we said the threat to cause these people to do one of these things, you know?* Do you understand that? (Whereupon the foreman confers with the rest of the jurors.) *Don't worry about the forcible theft and grabbing it. That doesn't happen, you understand that?*

"THE FOREPERSON: Yes.

"THE COURT: Now, what was the other part? What other part do you want in there? (Hands note to the foreperson.) Let's make it clear here as to what I first said. A person forcibly steals property and commits robbery when in the course of committing a larceny, that is stealing as I told you what larceny is, he uses or threatens the immediate use of physical force, threateks *[sic]* to use physical force on another person for the purpose of—and I gave you the two elements, you know. What else?

"THE FOREPERSON: *Are we to consider the seriousness of the injury to determine the charge of Robbery in the 2nd Degree and assault, or any—*

"THE COURT: Second?

"THE FOREPERSON: Yes.

"THE COURT: *No, I said causes physical injury to person who is not a participant in the crime.* That is I will read the entire thing. A person is guilty of Robbery in the 2nd Degree when he forcibly steals property and when in the course of the commission of the crime or immediate flight therefrom he or another participant in the crime causes physical injury to any

person who is not a participant in the crime. I said physical injury. First I told you what property was. Physical injury means impairment of physical condition or substantial pain, you know. Under this definition you must find that the physical injury interfered in some measure with the bodily functions or that it caused substantial and not slight or some pain. Do you understand that? (Whereupon the foreperson discusses same with the jurors.)

"THE FOREPERSON: *So we need not consider the seriousness of the injury, only if there was one?*

"THE COURT: *Yes, causing physical injury I gave you the difference between injury. I gave you physical injury, impairment of physical condition or substantial pain.* Serious physical injury means what it says, serious physical injury.

"MS. FELDMAN: May we approach for one minute?

"THE COURT: Yes, this will be off the record. (Whereupon there was an off the record conference held between the Court and all counsel.)

"THE COURT: You are thinking that you have to be concerned with serious physical injury in Robbery in the 2nd Degree?

"THE FOREPERSON: Yes.

"THE COURT: No, I said, as I read it to you before, physical injury. I did not say anything about serious physical injury. I said in the course of the commission of the crime or of immediate flight therefrom he causes physical injury to a person who was not a participant in the crime. Do you understand what I'm saying?

"THE FOREPERSON: Yes.

"THE COURT: I didn't say about serious physical injury, no you don't have to break a leg or anything like that, you know. I did not say that. You had another part? You had a lot there, I didn't read it.

"THE FOREPERSON: I think you covered it. May I have a minute?

"THE COURT: Yes * * *

"MS. FELDMAN: May we just approach for one minute?

"THE COURT: All right. (Whereupon an off the record discussion was held between the Court and all counsel.)

"THE COURT: All right, ready to continue?

"THE FOREPERSON: May I speak?

"THE COURT: Yes.

"THE FOREPERSON: Okay. If we find the defendant guilty of Robbery in the 1st Degree or 2nd Degree do we need to vote on the surcharges or what that implies?

"THE COURT: I answered that first.

"MR. MILGRAUM: Can you repeat that?

"THE FOREMAN: *If they find him guilty of Robbery in the 1st Degree or 2nd Degree do they have to consider the assault charges?*

"THE COURT: *No, you do what you want to do. It is not implied.* I will say it this way: It is not implied." (Emphasis supplied.)

In another colloquy the court again did not adequately respond to and focus on the jury's concern about when force had to be used in order to have a robbery. Immediately after this supplemental charge had been given, the defense attorney focused the court's attention on what the defendant was contending.

"THE FOREPERSON: Your Honor, in Robbery in the 1st and 2nd Degrees, the 1st Degree and 2nd Degree, could you clarify whether or not if it is forcible theft and/or force during flight?

"THE COURT: You are missing the point. I will do it this way: You use force for one or two purposes, you get it? One, I'll tell you and do it this way: Robbery, the person who steals property commits robbery in the course of committing a larceny, he uses or threatens the immediate use physical force upon another person for the purpose of one, this is one of the reasons, preventing or overcoming resistance to the taking of property. Do you see? Preventing or overcoming resistance to the taking of property. Do you understand that?

"THE FOREPERSON: Yes.

"THE COURT: Or to the retention thereof immediately after the taking. Is that clear? That is number one. Now number two, compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny. Two reasons, you know?

"THE FOREPERSON: Okay, your Honor.

"THE COURT: Do you get it then?

"THE FOREPERSON: Yes.

"THE COURT: You are using force for two reasons: One of the two reasons, you know—

"THE FOREPERSON: Okay. That is it, your Honor.

"THE COURT: You may retire. (Whereupon the jurors left the courtroom at 5:30 to continue with their deliberations. Where-

upon the following takes place outside of the presence of the jury:)

"MR. MILGRAUM: You Honor, I would like to take exception to each and every response of yours to the note except that portion of your response which says they have to consider Assault in the 2nd Degree if they find robbery. Otherwise I think the response was not responsive. I think that it was out of context. I think that the portions that you did not read, but ad libbed, were incorrect and I take exception to each and every one as previously stated.

"THE COURT: All right. What do you mean previously stated?

"MR. MILGRAUM: As I previously—previously stated. I take exception to all except the last portion which asks if they have to consider Assault in the 2nd Degree in the note.

"THE COURT: Do you have what I previously stated there? The record wouldn't be clear if you were going up on appeal because I think I didn't state what you stated before.

"MR. MILGRAUM: It is my contention that robbery should have been charged as forcible stealing in response to the note, as forcible stealing, and that the force has to be in the initial taking of the property in prevention or overcoming resistance to the taking of the property, or the retention of the property immediately after the taking.

"THE COURT: All right.

"MR. MILGRAUM: The aggravating factor in Robbery in the 2nd Degree would be the injury, the physical injury to a person who is not a participant of the crime after the commission of the forcible taking. Over here the way you have charged them it wasn't clear and it is not clear. *You have charged them that the forcible—the force can be used even if there is no forcible taking of the property, that is as long as there is force in an attempt to escape a larceny, that it is a robbery. That is not so.* First there has to be a forcible taking of the property, then after there is a forcible taking of the property which is defined in the definition of robbery at Penal Law Section 160 *[sic]*, says: 'First there has to be a forcible stealing, physical force in the taking and that force is the preventing or overcoming resistance to the taking of the property, or the redemtion *[sic]* of the property immediately thereafter of the taking.' Then they go back to the section Robbery in the 2nd Degree, 160.102A *[sic]* then they go back and say that after there has been a forcible taking if he commits injury in the flight therefrom then you have Robbery in the 2nd Degree. If there is just a larceny with no forcible

taking then you don't have to reach that point of whether there was an injury in the escape, and that is my contention. I take exception to the way you charged them, as I said before.

"THE COURT: You may take exception but that is not the law. The law is very clear and I am not worried about that. All right, very well. They have another hour before they are sent to dinner." (Emphasis supplied.)

The issue of when the force used is sufficient for a robbery is not new and must be addressed when the facts warrant it *(see, People v Nixon,* 156 AD2d 144 [1989], *appeal dismissed* 76 NY2d 870 [1990] [conviction of robbery in the third degree reduced to petit larceny]; *People v Tate,* 170 AD2d 291 [1991] [facts required that petit larceny be charged as lesser included offense of robbery]).

Finally, the court's charge on physical injury was confusing and not responsive to the jury's question. The following was the colloquy:

"THE FOREPERSON: Could you clarify what you mean by cause physical injury and what do you mean—could you define substantial pain and in a scratch is it considered that? *[sic]*

"THE COURT: Yes, that is an injury. You see, you are not—you are going to—well, I don't know. First you have to consider whether it was made with your finger or made with some weapon that might be dangerous and what the purpose was. You understand that? We are not concerned too much about what happened here. Why this was inflicted on the individual, what was the purpose, you know, to aid in the commission of this larceny? Do you understand what I'm saying? You cannot separate one from the other. You have to consider all of these elements, you know? Do you understand, and how it was done, with a fingernail? Then if with a fingernail not a knife it might be a little different. Do you follow me? I gave you the elements, physical injury caused by the defendant in an aid to committing this larceny."

The second reason for reversal is the court's *Sandoval* ruling. During the *Sandoval* hearing the People alleged that defendant had 53 arrests, 24 misdemeanor and 3 felony convictions dating back to 1974. The People sought inquiry into 17 convictions starting with 1979. The 3 felony convictions included possession of stolen property in the first degree, unauthorized use of a vehicle and grand larceny in the second degree. The misdemeanor convictions were petit larcenies, several arising from shoplifting, and a farebeating. Two of the

petit larcenies, from 1983 and 1989, respectively, were situations in which the defendant had taken property and then used violence (struck store employees) in his attempt to leave with it. The People sought inquiry into all of these convictions on the grounds that they bore directly on the issue of credibility and indicated defendant's willingness to place his interest above that of society. The People also maintained that the similar petit larcenies bore directly upon intent and use of force to flee. The defense argued it would be extremely prejudiced because defendant contended that this incident was basically shoplifting and not first degree robbery. The trial court concluded that defendant was not "immunized" from inquiry into charges in his "field of specialization" even though he was on trial for such a charge. The trial court ruled that the prosecution could inquire as to charges less than ten years old, including all petit larcenies.

Exclusion of prior convictions is largely a matter of discretion *(People v Shields,* 46 NY2d 764, 765 [1978]). Here, the court's *Sandoval* ruling would have permitted approximately 17 convictions including 3 felonies and 14 misdemeanors. In my view such a ruling is inconsistent with *People v Sandoval (supra)* and an abuse of discretion.

I would reverse.

Kassal, J. (dissenting).

I join in the dissent, and would add that the record supports defendant's claim that he was denied effective assistance of counsel. That counsel failed to provide the constitutionally mandated level of "meaningful representation" *(People v Baldi,* 54 NY2d 137, 147) is evident at virtually every stage of this trial.

For example, counsel made an opening statement in which he raised the defense of justification for defendant's use of force and, in so doing, created an expectation that defendant would testify, by assuring the jury that the prosecutor "knows less than I know because I have heard from the defendant". In fact, counsel did not call the defendant or any other witness to support the contention that defendant shoplifted the washcloths, but only used force to avoid being beaten when he was apprehended. Also in his opening statement, counsel assumed a burden of proof with respect to testimony a prosecution witness would give:

"[Y]ou are going to hear testimony that when the security guard was asked this: 'Did he cut you with the knife?' You will find that the answer was 'I don't—'

546

"[PROSECUTOR]: Objection.

"THE COURT: If he is going to prove it. Tell us what you are going to prove.

"[COUNSEL]: That is exactly what I am doing, your Honor.

"THE COURT: All right, he is going to prove it.

"[COUNSEL]: He is going to say he doesn't know."

In another attempted defense to the robbery counts, defense counsel pursued the claim that force had to be used virtually instantaneously with the theft of the washcloths in order to sustain a conviction. This was clearly a misapprehension of the law on a critical legal issue (see, People v Washington, 148 AD2d 559, lv denied 74 NY2d 670; People v Johnstone, 131 AD2d 782, lv denied 70 NY2d 800; People v Dekle, 83 AD2d 522, affd 56 NY2d 835). By failing to familiarize himself with the applicable law, counsel was foreclosed from considering appropriate claims, such as whether defendant's use of force occurred "immediately after the taking" (Penal Law § 160.00 [1]), and whether the force was a spontaneous and independent response to having been grabbed by the security guard, rather than an attempt to overcome resistance to the theft (see, e.g., People v Nixon, 156 AD2d 144, appeal dismissed 76 NY2d 870; People v Castro, 151 AD2d 690, lv denied 74 NY2d 846).

Counsel's ineptitude is further evidenced by his having elicited, through cross-examination of a prosecution witness, previously undisclosed details concerning his injuries. On direct, store manager John O'Dair had testified only that defendant had pushed over a sunglasses rack which "hit [him] on the head", and that his hand was "cut". Defense counsel's questioning brought out that O'Dair had sustained a visible and swollen bruise to the forehead, that the knife cut to his hand had caused soreness, swelling and bleeding, and that it had left a scar. In yet another egregious lapse, counsel failed to object, and thus preserve as a matter of law, claims related to the trial court's supplemental charge to the jury, which, as the dissent of Justice Smith details, contained serious error.

The totality of these and other examples of errors and omissions raised on appeal "reveal that the representation defendant received was neither adequate nor meaningful." (People v Echavarria, 167 AD2d 138, 141.) Rather, the record compels a conclusion that defense counsel's performance was "so unreasonable, inconsistent, and devoid of any possibility of success that it did not even rise to the level of trial strategy." (People v Lee, 129 AD2d 587, 588.)